**In re Keith R. RICHARDS, Debtor.**

**F & M MARQUETTE NATIONAL BANK, Plaintiff,**

v.

**Keith R. RICHARDS, Defendant.**

Bankruptcy No. 3–83–2087.

Adv. No. 84–209.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Dec. 31, 1987.

Patrick McDavitt, Briggs & Morgan, Minneapolis, Minn., for plaintiff.

William Kampf, Minneapolis, Minn., for defendant.

**528**

DENNIS D. O'BRIEN, Bankruptcy Judge.

This adversary proceeding came on for trial on October 5, 1987. Patrick McDavitt and Briggs and Morgan represent Plaintiff F & M Marquette National Bank (Marquette); William Kampf and Fredrikson and Byron represent Defendant Keith R. Richards. Based on testimony and documentary evidence heard and received at trial, on arguments and memoranda of counsel and on all the files and records herein, the Court now being fully advised in the matter issues these Findings of Fact, Conclusions of Law and Order for Judgment pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

## FINDINGS OF FACT

In February, 1980, Marquette advanced to Richards and his wife, Patricia L. Richards, an unsecured line of credit, evidenced by a promissory note in the amount of $150,000.00. On February 12, 1981, Marquette made an additional unsecured loan to Richards and his wife, evidenced by a promissory note for $35,000.00. On or about July 15, 1981, the $150,000.00 note and the $35,000.00 note were consolidated into one note (the Line of Credit Note) in the amount of $185,000.00, which was renewed from time to time. The last renewal occurred on August 31, 1983, when the note was renewed in the amount of $178,-300.00 through September 30, 1983.

In March, 1981, Richards and his wife also requested from Marquette, and Marquette agreed to issue to Northland Mortgage Company, a $125,000.00 standby letter of credit. A promissory note (the Letter of Credit Note) in the amount of $125,-000.00 was taken at this time from Richards and his wife to evidence their joint and several obligation to repay draws under the letter of credit. The Letter of Credit Note was renewed from time to time, as the letter of credit was extended.

The standby letter of credit, at the request of Richards, was extended from time to time. The last such extension occurred on October 14, 1983, extending the expiration of November 15, 1983. The letter of credit was drawn upon, in full, in November, 1983.

In December of 1983, Richards filed a Chapter 11 bankruptcy petition (his bankruptcy case was later converted to a case under Chapter 7), the unpaid balance of the Line of Credit Note amounted to $178,-400.00, plus interest, and was past due and in default.

At the time of filing of the Chapter 11 bankruptcy petition, the $125,000.00 Letter of Credit Note remained unpaid, was past due, and in default.

On March 30, 1983, J.E. Gates (Gates), a vice president and loan officer in Marquette's Commercial Loan Division and Richards' primary contact at Marquette after April of 1981, pursuant to Richards' request to renew and extend payment of the Line of Credit Note and the Letter of Credit Note, requested that Richards deliver to Marquette a current, personal financial statement. Gates received the 1983 Financial Statement on April 30, 1983.

In the 1983 Financial Statement, Richards represented that he had $4,092,000.00 of assets, $1,165,000.00 of liabilities, and a net worth of $2,927,000.00.

Richards submitted the 1983 Financial Statement to Marquette for the purpose of obtaining or maintaining credit. He represented to Marquette that the information provided in the statement was true, correct, and complete. He represented to Marquette that the bank may consider the information provided in the financial statement to be true and correct until a written notice of change is given to the bank by Richards. He also represented to Marquette that it may rely on the information provided in the financial statement, including a designation made by Richards as to ownership of property.

■ Richards submitted the 1983 Financial Statement with intent of defrauding Marquette by inducing Marquette to forebear from collection efforts and from seeking collateral for Richards' obligations to Marquette. The 1983 Financial Statement

contained material misrepresentations concerning Richards' assets, liabilities and net worth. Richards, a former banker and real estate broker, intentionally misrepresented his assets and intentionally failed to disclose certain direct and contingent liabilities.

As a result of receiving the 1983 Financial Statement from Richards on or about April 30, 1983, Marquette on May 8, 1983, renewed the $185,000.00 Line of Credit Note to July 15, 1983. On August 1, 1983, the principal amount of the note was reduced somewhat, and the Line of Credit Note was again renewed in the amount of $178,500.00 principal amount, to August 16, 1983. The final renewal of the Line of Credit Note occurred on August 31, 1983, when the note was renewed in the amount of $178,500.00 through September 30, 1983.

As a result of receiving the 1983 Financial Statement of Richards, Marquette on July 14, 1983, renewed the $125,000.00 Letter of Credit Note and extended the standby letter of credit.

Marquette relied, to its detriment, on the false representations contained in the 1983 Financial Statement. If it had known of the true state of Richards' financial condition, Gates would not have renewed the loans.

Marquette's reliance on the 1983 Financial Statement was reasonable and in accord with the standards of the industry. Gates was not required either by Marquette's policy or industry standards to conduct an independent investigation of the information contained in the 1983 Financial Statement. Even if Gates questioned Richards about the assets, it is unlikely that Marquette would have discovered Richards' fraud. Moreover, Gates could not have reasonably discovered the $2,370,611.00 of additional liabilities which Richards failed to disclose. Gates knew that Richards was a former banker and that Richards had a lending relationship with Marquette that had been in existence since 1980. Gates had no reason to suspect that the financial information contained on Richards' 1983 Financial Statement was false or incomplete.

## II.

### CONCLUSIONS OF LAW

The indebtedness owed by Richards to Marquette, Line of credit Note, is not dischargeable under § 523(a)(2)(B) of the Bankruptcy Code.

The indebtedness owed by Richards to Marquette, under the Letter of Credit Note, is not dischargeable under § 523(a)(2)(B) of the Bankruptcy Code.

Marquette is entitled to enforce against Richards in any Court of competent jurisdiction collection of the Line of Credit Note and Letter of Credit Note, along with all of the terms and conditions thereof including, but not limited to, interest, costs and attorney's fees as therein provided for.

## III.

### ORDER FOR JUDGMENT

Based on the foregoing Findings of Fact and Conclusions of Law,

IT IS HEREBY ORDERED: the Clerk of Court shall enter judgment in favor of Plaintiff F & M Marquette National Bank against Defendant Keith R. Richards in accordance with the Conclusions of Law stated above.

Let Judgment Be Entered Accordingly.

### MEMORANDUM

This adversary proceeding has had a long and tortured history. It was commenced on August 2, 1984, based on a complaint seeking judgment of nondischargeability of Richards' debt to the Marquette pursuant to 11 U.S.C. § 523(a)(2) and (b). On September 6, 1984, Richards filed a motion for dismissal based on alleged untimely commencement of the action. The motion was granted, affirmed by the District Court, but reversed by the Eighth Circuit Court of Appeals. A motion for summary judgment was subsequently filed by Richards on November 4, 1986. That motion was granted in part and denied in part by this Court in a 13–page

Order entered on April 14, 1987.[1] Richards requested discretionary consideration on appeal of a portion of that Order. The request was denied on May 26, 1987. The case was finally tried during a five-day hearing beginning on October 5, 1987. The Court's Order of April 14, 1987, together with the Court's Findings of Fact, Conclusions of Law, Order for Judgment and this Memorandum provide the basis for disposition of the matter.

The trial record is replete with substantial, clear and convincing evidence of the type needed to sustain a cause of action against Richards for nondischargeability based on his obtaining an extension and renewal of credit from Marquette by use of a false financial statement.[2] Richards furnished the statement to Marquette on April 30, 1983, at a time and under circumstances of extreme financial duress. The statement substantially overstated assets and omitted substantial liabilities. It portrayed as a healthy and sound financial condition, one that was, in fact, substantially and fatally deteriorated. Richards furnished the statement to Marquette, knowing it to be false, as part of a desperate attempt to conceal his financial failures and to delay total financial collapse. He intended that Marquette rely on the statement, and Marquette clearly and reasonably did rely on it. Credit was extended and renewed based on it.

No useful purpose would be served in belaboring this opinion regarding matters which are so evident from the substantial trial record in the case. When the law, as expressed in the Court's Order of April 14, 1987, is applied to the obvious facts, clearly a judgment of nondischargeability is mandated.

In light of this Court's Order of April 14, 1987, little more need be said here. However, Richards' continued assertion that Marquette must prove its damages by clear and convincing evidence, and that it has failed to do so, merits further comment. Richards claims that as of April 30, 1983, all his significant nonexempt assets were pledged to other creditors and that there simply were no assets that Marquette could have seized in satisfaction of the debt had it been reduced to judgment. From that, Richards concludes that Marquette's cause of action must fail since it has shown no damage from a fraud, even assuming one to have been perpetrated against it.

■ A nondischargeability action under § 523(a)(2)(B) is not an action for damages. As it pertains here, it is an action for determination of nondischargeability of a debt of an extension, renewal, or refinancing of credit obtained by the use of a false financial statement. Nowhere in the statute is the term "damages" used. It is not an element of the cause of action. Accordingly, Marquette has no burden of proof regarding damages.

It has been judicially recognized, and there is evidence of congressional intent, that fraudulent conduct which produces no adverse consequences to the victim, should not result in a judgment of nondischargeability.[3] Such fraud is "harmless fraud" or

---

1. Summary judgment was granted on a cause of action pled under § 523(a)(2)(A). *See: F & M Marquette Nat'l Bank v. Richards (In re Richards),* 71 B.R. 1017 (Bankr.D.Minn.1987).

2. Plaintiff submitted a well-written and thoroughly documented Post–Trial Brief dated October 23, 1987, that accurately details the relevant facts which are all readily apparent from the trial record.

3. Consider this recorded legislative history:
   [In] many cases, a creditor is required by state law to refinance existing credit on which there has been no default. If the creditor does not forfeit remedies or otherwise rely to his detriment on a false financial statement with respect to existing credit, then an exten-

sion, renewal, or refinancing of such credit is nondischargeable only to the extent of the new money advance; on the other hand if an existing loan is in default or the creditor otherwise reasonably relies to his detriment on a false financial statement with regard to an existing loan, then the entire debt is nondischargeable under Section 523(a)(2)(B). This codifies the reasoning expressed by the Second Circuit in *In re Danns,* 558 F.2d 114 (Second Circuit 1977).
1978 U.S.CODE CONG. & AD.NEWS, 95th Cong.2d. Sess., 5787, 6436 at 6453, *reprinted in* Legislative Statutes to Historical Revision Notes, West's Bankruptcy Code, Rules and Forms, 1987 Revised Edition, at p. 164.

"fraud in the air". The nondischargeability provisions of § 523 are remedial, not punitive. Thus, only reasonable reliance that is also detrimental to the creditor will sustain a cause of action for nondischargeability under § 523(a)(2)(B). Proof of detrimental reliance remains with the creditor seeking judgment of nondischargeability.

But, proof of detrimental reliance in a nondischargeability action under § 523(a)(2)(B) is not synonymous with proof of damages. The cause of action is not one for damages. As this Court observed in its Order of April 14, 1987, the nonobligatory renewal of indebtedness based on a false financial statement is, in itself, sufficient proof of detrimental reliance to initially sustain the cause of action. The detrimental reliance lies in the forfeiture of remedies and forbearance from collection incident to the renewal.[4]

It is true that forfeiture of remedies, and the general forbearance from collection should not ordinarily be considered detrimental reliance if it can be shown that such pursuits would, in any event, have been fruitless if undertaken. But such assertions are in the nature of an affirmative defense to the nondischargeability action, and the burden of proof on the issue should lie with the party raising it. This comports with the principles of sound and traditional jurisprudence; and, for the reasons expressed in the Court's Order of April 14, 1987, it is necessary to serve principles of fundamental fairness.[5]

Although Richards insists that Marquette suffered no loss by the renewals and forbearance, he has not made a clear and convincing showing. Whether Marquette would have collected all or a portion of its loans had they been called in the Spring of 1983 is simply pure speculation. A fundamental problem adding to that speculation lies with Richards' credibility at trial. He had none.

Evidence presented at the trial, to a great extent by Richards through his own testimony, has left the Court with the unshakeable impression that his objective during the course of these proceedings has been more to fashion a vehicle to carry various legal theories than to simply and candidly record the truth as he perceived it.

Based on the Findings of Fact, the discussion of the law in the Court's April 14, 1987 Order, and the Court's discussion in this Memorandum, the Court made its Conclusions of Law and ordered judgment as reflected in the separate orders made and entered for that purpose of even date herein.

---

**4.** This is consistent with the Legislative History of the section. *See* Footnote No. 3.

**5.** In this case, the fraud was committed in April of 1983. The nature of the fraud was concealment of Richards' true financial condition. To

require Marquette to prove, four years later, how much of its debt it could have collected at the time and what procedures would have been successful absent the fraud, would be to require the impossible.