In re Virginia C. HALL, Debtor.

**HOROWITZ FINANCE CORPORATION,**
**Plaintiff,**

v.

**Virginia C. HALL, Defendant.**

Bankruptcy No. 88–1970.
Adv. No. 88–0461.

United States Bankruptcy Court,
W.D. Pennsylvania.

Jan. 11, 1990.

---

Stephen J. Laidhold, Sable, Makoroff &
Libenson, Pittsburgh, Pa., for defendant.

Marvin Alan Rosman, Richmond, Va., Louis J. Sinatra, Lesser & Kaplin, Blue Bell, Pa., Lloyd F. Engle, Jr., Kuhn, Engle & Stein, Pittsburgh, Pa., for plaintiff.

Stephen I. Goldring, Asst. U.S. Trustee, Pittsburgh, Pa.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiff Horowitz Finance Corporation (hereinafter "Horowitz") seeks in this adversary action to have debts allegedly owed to it by Defendant/Debtor Virginia C. Hall (hereinafter "Debtor") which arise out of a Guaranty and Suretyship Agreement (Count I) and Commitment Letter (Count II), respectively, declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

Horowitz maintains that it provided funds and agreed to extend credit to Skyline Properties, Inc. (hereinafter "Skyline Properties") in reliance upon a materially false financial statement which Debtor published with intent to deceive.

Debtor denies that Horowitz reasonably relied upon the financial statement and denies that she intended to deceive Horowitz with it.[1]

This Court has reviewed all of the evidence presented at trial and has reviewed the applicable law and herein determines, for reasons set forth below, that the debt arising out of the Guaranty and Suretyship Agreement is not dischargeable and that any debt arising out of the Commitment Letter is dischargeable.

## FACTUAL BACKGROUND

Horowitz is a commercial finance company which is active in commercial real estate financing and the purchasing of consumer installment receivable contracts.

Debtor, *inter alia,* was the chairperson and principal shareholder of Skyline Properties, which was wholly owned and operated by the Hall family for the purpose of developing Hunter's Station Resort located in Forest County, Pennsylvania. An Order granting Debtor relief in bankruptcy was entered on July 25, 1988 at Bankruptcy No. 88-1970.

Ronald Hall is the son of Debtor and was the President of Skyline Properties.[2] Sometime in July or August of 1987, Horowitz was approached by an attorney acting as a broker to the Hall family, who inquired as to whether Horowitz would be willing to lend money to Skyline Properties to enable it to purchase additional acreage for the resort.

Horowitz required, as part of the loan application, that Debtor and other members of the Hall family submit personal financial statements. Early in September of 1987, Horowitz received from Debtor a statement of her financial affairs as of January 1, 1987. Attached to the financial statement was a letter dated September 3, 1987, executed by Debtor under oath in which Debtor swore that:

"I have prepared the attached personal statement of assets and liabilities as of January 1, 1987. As guarantor, I represent, warrant and confirm that there are no outstanding obligations and no suits, judgments or legal actions against me

---

1. Apparently, as an aside, Plaintiff avers for the first time in its brief that Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2) for failure to adequately explain a loss of assets. No mention is made of this averment in the 2nd Amended Complaint, nor did the evidence offered in support of this allegation meet the required burden of proof. To the contrary, in colloquy between counsel to the Plaintiff and the Court on July 26, 1989, said counsel assured the Court that in fact no general objection to discharge was being pursued in this adversary proceeding.

2. Listed below are bankruptcy cases related to the case at hand filed in the Western District of Pennsylvania:

| Case No. | Case Name | Date Filed |
|---|---|---|
| 88-1279 | Land, Sea & Air Development Corporation | 05/09/88 |
| 88-1280 | Hot Cakes Associates, aka/dba Country Manor Family Restaurant | 05/09/88 |
| 88-1483 | Ronald G. Hall and Antoinette Hall | 05/31/88 |
| 88-1969 | Gary Lee Hall | 07/25/88 |
| 88-2927 | Skyline Motors Air Cargo, Inc. | 10/28/88 |

except as stated herein. I further confirm that all statements made herein are correct and have been made to induce Horowitz Finance Corporation to grant credit to me with the knowledge that Horowitz Finance Corporation will rely thereon.

I also confirm that there has not been any material adverse change in my financial condition from January 1, 1987 to the date of this letter, and agree to notify you in writing of any material adverse change in my financial condition subsequent to that date."

Horowitz, based upon the loan package, including Debtor's financial statement, ultimately agreed to lend $600,000.00 to Skyline Properties. The closing on the loan took place on September 21, 1987. The loan agreement was executed by Ronald Hall in his capacity as President of Skyline Properties and by Debtor and other Hall family members as guarantors. Ronald Hall, acting on behalf of Skyline Properties, also executed a promissory note. Debtor, along with other family members, executed a separate Guaranty and Suretyship Agreement in which she guaranteed Skyline Properties' performance. Finally, Ronald Hall executed a Mortgage and Security Agreement on behalf of Skyline Properties which granted Horowitz a first mortgage on the Iron Bridge Restaurant, which was situated on the resort property, and a second mortgage on the 1050 acres comprising the resort.

Shortly after the closing, Horowitz again was approached by Skyline Properties' attorney/broker, who inquired as to whether Horowitz would be willing to commit itself to purchasing $1,000,000.00 in installment notes from Skyline Properties, which intended to sell parcels of land in the resort to third parties.

A Commitment Letter subsequently was executed on October 31, 1987, wherein Horowitz agreed to purchase and Skyline Properties agreed to sell installment notes arising out of the sale of undivided fractional interests in real estate at Hunter's Station Resort. The document was executed by Ronald Hall as President of Sky-

line Properties and by Debtor (as well as other Hall family members) as guarantor. (The Commitment Letter subsequently was amended in a particular not relevant to this action on November 5, 1987.)

The closing on the agreement embodied in the Commitment Letter which was scheduled for January 14, 1988, never took place. Ronald Hall met with Joseph Weiner, Executive Vice–President and Secretary of Horowitz ("Plaintiff"), on January 12, 1988, at which meeting he informed Plaintiff that Skyline Properties had reached agreement with Patten Corporation ("Patten") for Patten to purchase from Skyline Properties the same installment contracts referenced in the Commitment Letter. Ronald Hall provided Horowitz at said January 12, 1988 meeting with a revised personal financial statement of Debtor which purported to disclose her financial condition as of August 1, 1987. Ronald Hall inquired at this meeting whether Horowitz would be willing to lend additional money to Skyline Properties to enable it to consolidate its existing indebtedness and to complete various improvements at the resort. The representation was made at that meeting that Patten would serve as guarantor under the proposed loan. Horowitz considered the request but ultimately turned it down some months later.

Debtor's financial statement as of August 1, 1987, which Ronald Hall tendered on January 12, 1988, differed in one crucial respect from her financial statement as of January 1, 1987. The former disclosed that Debtor had guaranteed the payment of certain loans to Hall family businesses. The latter financial statement, which had been submitted in connection with the previously closed $600,000.00 loan, contained no such disclosure.

The bankruptcy schedules attached to Debtor's Chapter 11 bankruptcy petition, which was filed on July 25, 1988, listed in excess of $9,000,000.00 in liabilities. Debtor declared that she owed $2,413,171.16 to secured creditors and $6,837,970.54 to unsecured creditors. Included among the latter was an $800,000.00 liability to Naples Fed-

eral Savings and Loan of Naples, Florida. (hereinafter "Naples").

Horowitz was informed by Naples in February of 1988 that Debtor had executed an unlimited personal guarantee on August 8, 1985 for four (4) loans totalling $1,400,-000.00 by Naples to Skyline Development Group, another Hall family business. The loans in question occurred between August 1, 1985 and December 11, 1986, which was prior to the statement of financial affairs as of January 1, 1987 submitted by Debtor in support of the $600,000.00 loan application.

## ANALYSIS

Section 523(a) of the Bankruptcy Code provides that a discharge under Section 727 does not apply to certain debts. Section 523(a)(2)(B), for instance, provides in relevant part that:

§ 523. **Exceptions to discharge.**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made on published with intent to deceive; . . .

■■■ Since the dischargeability of a debt can significantly affect a debtor's ability to make a fresh start, the exceptions to dischargeability set forth in 11 U.S.C. § 523(a)(2)(B) are to be strictly construed against the creditor and in favor of the debtor. *In re Ward*, 88 B.R. 727 (Bankr. W.D.Pa.1988). The creditor must prove each and every element of a given exception to discharge by clear and convincing evidence. *In re Ward, supra* at 729.

Horowitz must prove each of the following in order to establish that the above debts to it are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B):

(1) that Debtor provided Horowitz with a written statement of her financial condition;

(2) that the statement was materially false;

(3) that Horowitz reasonably relied on it; and

(4) that Debtor caused it to be made or published it with intent to deceive Horowitz.

*See In re Liptak*, 89 B.R. 3 (Bankr.W.D.Pa. 1988).

■■■ In addition to its being reasonable, the reliance by the creditor must be detrimental in order for the debt arising out of that reliance to be nondischargeable under 11 U.S.C. § 523(a)(2)(B). *In re Long*, 44 B.R. 300 (Bankr.D.Minn.1983); *In re Richards*, 81 B.R. 527 (Bankr.D.Minn. 1987). Proof of detrimental reliance lies with the creditor who brings an action pursuant to § 523(a)(2)(B). *In re Richards, supra* at 531. Numerous courts have adopted this principle by making it one of the essential elements of a § 523(a)(2)(B) action. The creditor must have suffered the alleged damage or loss as the proximate result of the representations. *See, e.g., In re Hott*, 99 B.R. 664 (Bankr.W.D. Pa.1989).

## COUNT I

### HOROWITZ v. VIRGINIA C. HALL GUARANTY AND SURETYSHIP AGREEMENT

Debtor does not deny that she provided Horowitz with a written statement of her financial condition in connection with the $600,000.00 loan and could not seriously deny that it was materially false. These matters do not appear to be at issue here. Rather, Debtor denies that she published it with intent to deceive Horowitz and denies that Horowitz reasonably relied on the financial statement.

This Court does not accept Defendant's defense and, to the contrary, is convinced that Horowitz has demonstrated by clear and convincing evidence that it reasonably relied on the financial statement in making the $600,000.00 loan and that Debtor published it with intent to deceive Horowitz.

In order for Horowitz to establish its case pursuant to 11 U.S.C. § 523(a)(2)(B)(iii), it must show *both* that it *actually* relied on the financial statement *and* that such reliance was *reasonable.* *In re Martz*, 88 B.R. 663 (Bankr.E.D.Pa.1988).

■■■■ Horowitz actually relied on the financial statement. Plaintiff's agent testified unequivocally, and this Court accepts as a fact, that Horowitz would not have loaned $600,000.00 to Skyline Properties had it known at the time that Debtor had millions of dollars in contingent liabilities. Obviously, the fact that Debtor failed to voluntarily divulge this information would further Plaintiff's determination not to make the loan. *In re Coughlin*, 27 B.R. 632 (Bankr. 1st Cir.1983) (citations omitted). Evidence demonstrating that a loan would not have been made had the lender received accurate information is sufficient to establish reliance.

■■■ Plaintiff acknowledges that it did not rely exclusively on Debtor's financial statement in deciding to lend Skyline Properties $600,000.00. Had it done so, an argument could be advanced that such reliance was not reasonable. However, this does not mean that Horowitz did not actually rely on the financial statement. A creditor need not rely exclusively or entirely on a financial statement. Partial reliance may be sufficient. *In re Tomei*, 24 B.R. 204 (W.D.N.Y.1982) (citations omitted). All that is required for there to be actual reliance is that the financial statement have been "a contributory cause of the extension of credit". *In re Drewett*, 13 B.R. 877 (Bankr.E.D.Pa.1981) (*quoting, In re Shipley*), 1 B.R. 85 (Bankr.D.Md.1979)). At the very least, Debtor's financial statement was such a "contributory cause" of the $600,000.00 loan.

■■■ Horowitz's reliance on the financial statement, to the extent that it did rely, also was reasonable.

Care must be taken when evaluating a creditor's reliance on a financial statement to avoid scrutinizing the creditor's business judgment instead of determining whether its reliance was reasonable. *In re Kroh*, 88 B.R. 987 (Bankr.W.D.Mo.1988).

■■■ The standard for determining whether such reliance was reasonable is objective—i.e., that degree of care which would be exercised by a reasonably cautious person in an average business transaction. *In re Icsman*, 64 B.R. 58 (Bankr.N.D.Ohio 1986).

■■■ A creditor does not have an affirmative duty to verify the accuracy of a financial statement. *Matter of Earls*, 80 B.R. 978 (W.D.Mo.1987). It is not obligated to conduct an independent investigation when, on its face, all facts are sworn to as accurate. *In re Kroh, supra* at 994. Accordingly, the fact that Horowitz relied on Debtor's representations concerning her liabilities and did not independently verify them does not entail that its reliance was unreasonable.

The financial statement was complete on its face, contained no apparent inconsistencies, and gave no indication that Horowitz should have attempted to verify the accuracy of the representations as to Debtor's liabilities. Horowitz had no reason to suspect that Debtor had grossly understated her contingent liabilities by approximately $9 million.

■■■ In addition, there is no reason to believe that a time-consuming and costly, all-inclusive investigation on the part of Horowitz as to Debtor's liabilities would have uncovered the inaccuracies. In fact, when Horowitz contacted Naples, which had been identified as a credit reference by Ronald Hall prior to the $600,000.00 loan, Naples informed Horowitz that Debtor was a "good customer". Said statement was clearly a subjective opinion. For reasons of their own, Naples determined it would not, or legally could not, advise Plaintiff that Debtor had guaranteed $1,400,000.00

in loans by Naples. When a financing statement, on its face, contains no information suggesting the need for further investigation, and there is no reason to believe that further investigation would have revealed inaccuracies in the financial statement, a creditor's reliance on it is reasonable. *Matter of Garman,* 643 F.2d 1252 (7th Cir.1980).

Debtor further claims that Horowitz had failed to establish by clear and convincing evidence that she published the financial statement with intent to deceive Horowitz. *See* 11 U.S.C. § 523(a)(2)(B)(iv).

Debtor testified at trial that she completely trusted her son, Ronald Hall, and relied upon him to handle all of her financial affairs. She advised that she knew virtually nothing about her own financial condition. According to Debtor, she was unaware that the financial statement submitted in connection with the request for the $600,000.00 loan grossly understated her liabilities. Thereafter, she signed a notarized letter attesting to the accuracy of the financial statement because her son, Ronald Hall, had told her to do so. In short, Debtor would have one believe that she was an uninformed, trusting soul who preferred to bury her head in the sand while others conducted her substantial business affairs for her.

■ Debtor has not denied the allegation that her financial statement grossly understated her liabilities. A rebuttable presumption of intent to deceive arises upon the publishing of a materially false financial statement. *In re Jones,* 88 B.R. 899 (Bankr.E.D.Wis.1988). The creditor, however, still has the ultimate burden of proof on this matter. *In re Hott,* 99 B.R. 664 (Bankr.W.D.Pa.1989).

■ While a showing of unknowing inaccuracy is not sufficient to establish intent to deceive, a showing of *actual* knowledge of the inaccuracy is not necessary. It may be assumed that a debtor intends the natural, foreseeable consequence of his/her actions. *In re Coughlin, supra* at 636.

■ Since a debtor almost never will admit to having an intent to deceive or defraud a creditor, circumstantial evidence may be relied upon to support such a finding. *In re Liptak, supra* at 5.

■ The totality of the circumstances in this case clearly suggests that Debtor did intend to deceive Horowitz when she published the statement of her financial condition as of January 1, 1987 and submitted it in connection with the $600,000.00 loan application.

To begin with, Debtor does not appear to be the innocent, trusting soul she claims to be. On the contrary, the evidence overwhelmingly indicates that she is a sophisticated and intelligent individual who is very active in and very much aware of her business affairs. Debtor has been involved in numerous family-owned business for over thirty (30) years. Her federal income tax returns for the years 1985–88 list her occupation as "corporate executive". She was chairperson and principal shareholder of Skyline Properties, still is Chairperson and CEO of Skyline Air Cargo, Inc., VC Express, Inc., and Land, Sea and Air Development Corporation, and was Treasurer of Bobby Rubino's, a restaurant in which the Hall family was a general partner. Debtor has engaged in activities having a value in the millions and has incurred unsecured debts approximating $9 million.

In addition, the high level of awareness of the specifics of the $600,000.00 loan exhibited by Debtor at trial belies her contention that she knew little or nothing about the matter. Clearly, Debtor was aware that Skyline Properties had borrowed $600,000.00 from Horowitz and that she had executed a Guaranty and Suretyship Agreement. She also understood the nature of the resulting obligation.

Finally, Debtor demonstrated an awareness of the nature and extent of many of her investments. She was aware that she had invested $160,000.00 of her own money in Skyline Properties. Debtor also knew that she had invested approximately $365,-000.00 in the Melbourne Beach Hilton Hotel and described it as a "tax shelter". In addition, she also was aware that she had borrowed $300,000.00 from U.S. National

Bank in Johnstown, Pennsylvania, and knew that she owned an interest in Standard Energy Corporation, an oil drilling partnership, which she valued at $18,750.00.

In short, Debtor's insistence that she "didn't know" that her financial statement grossly understated her liabilities is not credible. Moreover, even if she did not *actually* know that it was inaccurate, she *should* have known that it was inaccurate and, at the very least, she was recklessly indifferent as to its accuracy. Intent to deceive may be established by a showing of reckless indifference to, or reckless disregard of, the accuracy of information in a financial statement. *In re Liptak, supra* at 5. It may be established by a showing that the debtor had seen the financial statement and the errors were such that she knew or should have known of their falsity. *Matter of Gray,* 22 B.R. 676 (Bankr.W.D. Wis.1982). Debtor, at a base minimum, reads and understands the English language and has at least basic business acumen. Utilizing same, she would have realized the financial statement was false. Failure to utilize same indicates a reckless indifference to truth. Neither bolsters Debtor's position.

## COUNT II

### HOROWITZ v. VIRGINIA C. HALL COMMITMENT LETTER

Horowitz's attempt to have any debt arising out of the Commitment Letter also declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) must fail because Horowitz has failed to establish the essential elements listed previously. In particular, Horowitz did not establish, by clear and convincing evidence, that its decision to execute the Commitment Letter was based in any way on a statement submitted by Debtor concerning her financial condition. In addition, no credible evidence was elicited indicating Plaintiff relied to its detriment, nor have they proved damage with any appropriate degree of specificity.

The circumstances leading up to the Commitment Letter are unclear. Plaintiff's officer testified that Debtor's attorney/broker approached it shortly after the closing of the $600,000.00 loan, to inquire whether it would be willing to commit $1,000,000.00 to purchase installment notes which Skyline Properties expected to receive from individual purchasers of undivided fractional interests in real estate at Hunter's Station Resort. He also testified that the Commitment Letter was executed by Horowitz on October 31, 1987 (and was amended on November 5, 1987), and stated that the closing was scheduled for January 14, 1988. Very little was said, however, about what transpired between the attorney/broker's inquiry and the execution of the Commitment Letter. Plaintiff did *not* clearly indicate, for instance, either that Debtor submitted another financial statement or that Horowitz merely considered the financial statement she previously had submitted in connection with the $600,000.00 loan. The Court can only speculate about this; we decline to speculate.

Moreover, the evidence strongly suggests that Horowitz made the commitment *without* relying on any financial statement submitted by Debtor. Plaintiff testified that Ronald Hall was supposed to provide "additional financial information" in the interim between execution of the Commitment Letter and the closing. It would appear that this "additional financial information" included additional financial statements of various Hall family members, including Debtor. Plaintiff further testified that this information was not provided until January 12, 1988, when Ronald Hall informed Plaintiff that Skyline Properties had entered in an agreement with Patten Corp. concerning the installment notes referenced in the Commitment Letter. As has been indicated, the financial statement provided at that time indicated Debtor's financial condition as of August 1, 1987 and disclosed for the first time that Debtor had personally guaranteed loans for various Hall family enterprises. Clearly, at this point Plaintiff had a basis of inquiry relating to the contingent liability.

In addition, the Court has heard no testimony indicating Plaintiff relied to its detri-

ment. No money changed hands and at best Plaintiff has lost an illusory expectation interest. No evidence was offered indicating a guarantee or even a guess as to how many lots would be sold. Plaintiff offered a $300,000.00 figure relating to potential loss of profit, but insufficient data was submitted as to how this figure was determined. We have no testimony indicating Plaintiff changed its position in reliance upon this incomplete transaction, and no evidence was offered as to Plaintiff's loss. As Plaintiff has failed to meet its burden of proof, this Count must be Dismissed.

An appropriate Order will be issued.

## ORDER OF COURT

AND NOW at Pittsburgh in said District this 11th day of January, 1990, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that the debt incurred by Debtor, Virginia C. Hall, in connection with the $600,000.00 loan by Plaintiff, Horowitz Finance Corp. to Skyline Properties, Inc. on September 21, 1987, is NOT DISCHARGEABLE.

IT IS FURTHER ORDERED that any debt incurred by Debtor in connection with the Commitment Letter executed on October 31, 1987 and November 5, 1987, IS DISCHARGEABLE.