**In re David Ronald ASTE,
aka Ron Aste, Debtor.**

**ALSIDE SUPPLY CENTER SALT LAKE CITY, DIVISION OF ALSIDE SUPPLY, INC., Plaintiff,**

v.

**David Ronald ASTE, aka Ron Aste, Defendant.**

**Bankruptcy No. 89B–4488.
Adv. No. 89PB–0695.**

United States Bankruptcy Court,
D. Utah, C.D.

June 11, 1991.

Gary E. Doctorman and Cy H. Castle, of Parsons, Behle & Latimer, Salt Lake City, Utah, for plaintiff.

Jamis M. Johnson, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

JUDITH A. BOULDEN, Bankruptcy Judge.

The trial of this nondischargeability action commenced November 30, 1990, and was continued for calendaring reasons to March 6, 1991. In the interim, the United States Supreme Court's ruling in *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), indicated that the standard of persuasion in actions to determine the dischargeability of a debt is one of preponderance of the evidence.[1] This court must now attempt to reconcile the application of the preponderance of the evidence standard with the obligation to construe nondischargeability actions in favor of the debtor.[2]

The complaint sought an exception to discharge pursuant to 11 U.S.C. § 523(a)(2)(B)[3] of the obligation owed by David Ronald Aste (Debtor), the chapter 7 debtor herein, to Alside Supply Center of Salt Lake City, a division of Alside, Inc. (Alside), a national company that supplied vinyl siding. The Debtor signed a materially false financial statement issued by and regarding the financial condition of Utah Pacific Energy Management Company, Inc. (Utah Pacific) as the vice president of that entity. An employee of Utah Pacific prepared the false financial statement at the direction of Robert Dale Aste (Dale Aste), the president of Utah Pacific and brother of the Debtor. The Debtor had no actual knowledge that the financial statement was false and had no reason to believe the information contained in the financial statement was incorrect.

The parties have stipulated that the only issues remaining for decision are whether the Debtor intended to defraud Alside and whether Alside reasonably relied upon the false financial statement. The court finds by a preponderance of the evidence that the Debtor had no actual intent to defraud Alside, nor was his conduct so reckless as to require this court to infer an intent to

---

1. The Tenth Circuit Court of Appeals, in line with the Eighth Circuit's decision in *Grogan v. Garner*, 806 F.2d 829 (8th Cir.1986), *rev'd, Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), had previously applied the clear and convincing standard in several 11 U.S.C. § 523(a) actions, most notably section 523(a)(2), (4), and (6) actions. *See Driggs v. Black (In re Black)*, 787 F.2d 503 (10th Cir.1986) (subsection (a)(2)); *C.I.T. Fin'l Servs., Inc. v. Posta (In re Posta)*, 866 F.2d 364, 367 (10th Cir.1989) (subsection (a)(6)).

2. Exceptions to discharge are to be narrowly construed against the creditor and liberally construed in favor of the debtor. *Black*, 787 F.2d at 505; *John Deere Co. v. Gerlach (In re Gerlach)*, 897 F.2d 1048, 1052 (10th Cir.1990); *Kansas State Bank & Trust Co. v. Vickers (In re Vickers)*, 577 F.2d 683, 687 (10th Cir.1978).

3. Unless otherwise noted, subsequent statutory references will be to Title 11 of the United States Code.

deceive. Having found that Alside failed to meet an essential element of section 523(a)(2)(B), the court need not reach the issue of whether Alside's reliance upon the false writing was reasonable.

### FACTS

In March of 1985, the Debtor was employed by Utah Pacific, a small company engaged in the installation of vinyl siding on residential buildings. Dale Aste, the president of the company, had purchased Utah Pacific in conjunction with another party and shortly thereafter became the sole shareholder. The Debtor was a director and vice president of Utah Pacific; however, his primary function was as a salesman for the company. The brothers may have discussed Utah Pacific's business, but Dale Aste managed and operated the company. The Debtor was paid a commission on sales that he made, but received no other income from Utah Pacific.

Utah Pacific employed Janice Garn Sipes (Sipes) as office manager, secretary, and bookkeeper. She was responsible for Utah Pacific's records, handled accounts payable and receivable, and reported her activities to Dale Aste daily. Sipes was reliable, honest, and conscientious in fulfilling her duties.

In early 1985, Utah Pacific had established lines of credit with various suppliers, one of which was Alside. In order to establish a line of credit with Alside to obtain vinyl siding materials on credit, Sipes filled out a portion of a Credit Application and Representations (application) dated March 22, 1985. The application contained, among other things, a financial statement for Utah Pacific. As was her habit, Sipes set forth on the application the cash balances, ac-

counts receivable, and accounts payable as reflected on the books of account that she kept. She obtained other information concerning the assets and liabilities of Utah Pacific directly from Dale Aste, and forwarded the application to Dale Aste to be signed. Dale Aste and the Debtor signed the application, and they both executed a personal guarantee of Utah Pacific's debt to Alside. At the time the Debtor signed the application as vice president[4] of Utah Pacific, he had no reason to believe the information contained therein was incorrect and he made no attempt to verify the accuracy of the information contained in the application.

Certain assets on the application were overvalued and it did not reflect corresponding liabilities associated with them, thereby materially overstating the financial position of Utah Pacific.[5] However, nothing contained on the face of the financial statement would or should have alerted the Debtor to its falsity. The Debtor relied upon the representations set forth by Sipes and Dale Aste on the application.

The application was subsequently submitted to Alside's local credit manager who processed the application according to company policy. Alside extended initial credit to Utah Pacific of $2,500 in April of 1985 to purchase vinyl siding materials. In the latter part of April 1985, the local credit manager sent to Alside's home office a credit forwarding sheet that included a request on behalf of Utah Pacific for an increase in its credit limit to $5,000. Pursuant to its regular credit practices, Alside obtained a credit bureau report on Utah Pacific, sent inquiry letters to Utah Pacific's trade creditors and contacted trade references by telephone. Based upon the fi-

---

**4.** The Debtor denied he was vice president of Utah Pacific and that the initials "V P" placed after his name on the application were written by him. For purposes of this trial, however, the Debtor stipulated that he signed the application.

**5.** The application understated the liabilities of Utah Pacific by approximately $33,000 by failing to list the outstanding obligations against a 1985 Chevrolet Blazer truck, a 1985 Sea Ray Boat, and a 1983 Cadillac Cimmaron, which obligations Utah Pacific had assumed through

practice. In addition, the value of the tools of the trade were approximately $2,500 and set forth in the financial statement at $15,000. These facts were adduced at a nondischargeability trial against Dale Aste. The falsity of the financial statement and the materiality of the false statements were stipulated to by the parties in this trial. The application was a reflection of the financial condition of Utah Pacific, an insider of the Debtor as defined in 11 U.S.C. § 101(31)(A)(iv).

nancial condition reflected by the application, the favorable credit report, and responses received from Utah Pacific's creditors, the local credit manager recommended that Alside grant an increase in credit available to Utah Pacific of $5,000. Alside's home office approved the credit increase after it received the appropriate documentation. In September of 1985, Alside increased Utah Pacific's credit limit once again, to $7,500.[6]

Utah Pacific eventually exceeded its credit limit and defaulted on its obligation to Alside. On July 27, 1989, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code. In this subsequently filed adversary proceeding, this court granted Alside's motion for partial summary judgment, determining that pursuant to the guarantee the Debtor was indebted to Alside in an amount in excess of $15,351. Upon motion to dismiss made by the Debtor at trial, the court ruled that Alside did not rely on the false application for extensions of credit for amounts in excess of $7,500, and reserved until this ruling whether the debt was nondischargeable.

## ISSUES

The stipulation of the parties has narrowed the issues to a determination of whether the Debtor's lack of inquiry as to the accuracy of the application was sufficiently reckless so as to constitute intent to deceive and whether Alside reasonably relied on the false application in granting credit up to $7,500. A determination of the issues requires to court to balance the preponderance of the evidence standard in light of the court's duty to narrowly construe nondischargeability actions in favor of the debtor.

## DISCUSSION

*Jurisdiction*

This court has jurisdiction over the parties and subject matter of this adversary proceeding under 28 U.S.C. § 1334. The determination of the dischargeability of a claim is a core matter pursuant to 28 U.S.C. § 157(b)(2)(I), and this court has authority to enter a final order in this adversary proceeding. Venue is proper in the Central Division of the District of Utah.

*Burden of Proof and Standard of Persuasion*

Alside has the burden of proof in establishing the four-pronged elements of section 523(a)(2)(B).[7] *See Driggs v. Black (In re Black),* 787 F.2d 503, 505 (10th Cir.1986). The pivotal issue in this complaint is whether the Debtor possessed the requisite intent to deceive. Alside must establish such intent by a preponderance of the evidence.[8]

---

6. This extension of credit was part of and contemporaneous with the original transaction and relied substantially upon the same documentation and inquiry. Based upon the information acquired, including the strength of the financial statement in the application, the local office recommended to the home office that additional credit be extended to Utah Pacific. A subsequent request for increased credit limit was granted by Alside, but Alside did not rely on the original application in extending the credit.

7. The four elements that must be proven by a preponderance of the evidence are that the debtor obtained money, property, services, or an extension, renewal, or refinancing of credit through use of a statement
 1) that is materially false,
 2) that relates to the debtor's or an insider's financial condition,
 3) that the creditor reasonably relied on, and
 4) that the debtor caused to be made or published with intent to deceive.
11 U.S.C. § 523(a)(2)(B).

8. The preponderance standard requires the court "to believe that the existence of a fact is more probable than its nonexistence before [the court] may find in favor of the party who has the burden to persuade [the court] of the fact's existence." *In re Winship,* 397 U.S. 358, 371–72, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) *quoting* F. James, *Civil Procedure* 250–51 (1965). The preponderance of the evidence standard "is susceptible to the misinterpretation that it calls on the trier of fact merely to perform an abstract weighing of the evidence in order to determine which side has produced the greater quantum, without regard to its effect in convincing his mind of the truth of the proposition asserted." *Winship,* 397 U.S. at 367–68, 90 S.Ct. at 1074, *quoting* Dorsen & Rezneck, *In re Gault and the Future of Juvenile Law,* 1 Fam. L.Q. 1, 26–27 (1967).

The function of a standard of persuasion is to "instruct the factfinder concerning the degree of confidence our society thinks [the factfinder] should have in the correctness of factual conclusions for a particular type of adjudication."

*Grogan,* 111 S.Ct. at 661. However, this standard of persuasion must be applied in light of the principle that exceptions to dischargeability be construed strictly against the creditor and construed liberally in favor of the debtor so as not to conflict with the debtor's fresh start.[9] *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). One purpose of chapter 7 bankruptcy is relief from practically all financial obligations for the improvident but honest debtor.[10] In furtherance of this purpose, the Tenth Circuit and several other circuit courts before the Supreme Court's decision in *Grogan* applied a presumption in favor of the debtor by enforcing the stricter standard of clear and convincing evidence. The higher standard was previously deemed to promote the goal of a fresh start for the honest debtor whereas the preponderance standard was not.[11]

*Strict Statutory Construction vs. Liberal Evidentiary Standard*

This court is required to construe exceptions to dischargeability narrowly in favor of the debtor so as not to conflict with Congressional policy to allow honest debtors a fresh start. The admonition, however, does not relate to an evidentiary standard of proof, but to a standard of statutory interpretation. To strictly construe exceptions to discharge, the court must be guided by the rule that "exceptions to the operation of discharge ... should be confined to those plainly expressed" in the bankruptcy law. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). "Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system." 3 *Collier on Bankruptcy* ¶ 523.-05A at 523–17 (15th ed.1988). Therefore, bankruptcy courts should not endeavor to expand the scope of subsection 523(a)(2)(B)(iv)'s "intent to deceive" or any other section 523(a) language, for that matter. *See, e.g., In re Kasler,* 611 F.2d 308, 310 (9th Cir.1979) (the court chose not to expand the class of "willful" injuries under section 17a(8) of the Bankruptcy Act of 1898). Further, any interpretation of the nondischargeability provisions should refrain from subjecting the plain meaning within section 523(a) to any judicial gloss. Congress has also imposed procedural requirements to protect the debtor's fresh start by "giving creditors the right to have dishonestly incurred claims excepted from discharge, but also creating significant procedural hurdles which must be overcome before the right can be exercised." *Sweet v. Hanson (In re Hanson),* 104 B.R. 261, 262 (Bankr.N.D.Cal.1989).

The court's duty to strictly construe the statutory language regarding discharge in favor of the honest debtor remains unaffected by replacing a clear and convincing evidentiary standard with one based upon a preponderance of the evidence. The bur-

---

*Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979), *quoting In re Winship,* 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring). Which standard is to be applied reflects "a very fundamental assessment of the comparative social costs of erroneous factual determinations," *Winship,* 397 U.S. at 370, 90 S.Ct. at 1075, and serves "to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington,* 441 U.S. at 423, 99 S.Ct. at 1808.

9. Reported cases within this jurisdiction have narrowly construed exceptions to discharge in actions under 11 U.S.C. § 523(a)(2), *e.g., Black,* 787 F.2d at 505; *First Bank v. Mullet (In re Mullet),* 817 F.2d 677, 680 (10th Cir.1987); and under section 523(a)(6), *e.g., Farmers Ins. Group v. Compos (In re Compos),* 768 F.2d 1155, 1158–59 (10th Cir.1985).

10. The Tenth Circuit has recognized that the "debtor rehabilitation policy which motivates" strict interpretation of the discharge exceptions in favor of the debtor applies only to honest debtors. *John Deere Co. v. Gerlach (In re Gerlach),* 897 F.2d 1048, 1052 (10th Cir.1990); *citing Jennen v. Hunter (In re Hunter),* 771 F.2d 1126, 1130 (8th Cir.1985).

11. The Eighth Circuit reasoned that the clear and convincing standard was appropriate since "courts should ... construe provisions of the Bankruptcy Code favoring the debtor broadly" and because the more stringent standard protected the fresh start principle. *Henson v. Garner (In re Garner),* 881 F.2d 579, 582 (8th Cir. 1989), *rev'd, Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

den remains on the creditor to demonstrate the debtor's dishonesty with respect to the creditor's debt and to show definitively that the debt falls within each and every provision of the explicit language of section 523(a)(2)(B). Until the creditor so proves, the debtor retains entitlement to the debtor rehabilitation policy considerations. *See generally Jennen v. Hunter (In re Hunter)*, 771 F.2d 1126, 1130 (8th Cir.1985).

Alside has the burden of proving intent to deceive, and the failure to carry the burden of proof on the evidence will be fatal to Alside's case. Even using a standard of preponderance of the evidence, Alside is still required to present credible evidence regarding the Debtor's intent to defraud. Proof of an inferred intent, as opposed to an actual intent, must be viewed in light of the requirement that the court give every word of the statute its plain meaning and that any doubt weigh in favor of the Debtor. The lower standard continues to promote the undergirding purpose of comprehensive relief from practically all debts. *See Hermann Hospital Estate v. Coffee (In re Coffee)*, 103 B.R. 825, 828 (Bankr.S.D.Tex.1987); *Murphy & Robinson Inv. Co. v. Cross (In re Cross)*, 666 F.2d 873, 879–80 (5th Cir.1982).

*Intent to Deceive: Reckless Disregard*

█ In order for Alside's claim to be held nondischargeable, the application submitted to Alside must have been made or published by the Debtor "with intent to deceive" pursuant to section 523(a)(2)(B)(iv). The Debtor's false writing must have been either knowingly made or made with sufficient recklessness so as to be fraudulent. *Black*, 787 F.2d at 506.

Alside was unable to prove that the Debtor possessed an actual intent to deceive. There is no evidence that the Debtor dishonestly signed the false application with actual knowledge of its incorrectness. Neither is there evidence that he had reason to believe the application was inaccurate either from the face of the document or from other information. The Debtor's uncontradicted testimony was that he relied on the information filled out on the application by Sipes and Dale Aste.

Alside is required, therefore, to prove that the Debtor's action or inaction was sufficiently reckless to infer deceptive intent from surrounding circumstances. The Tenth Circuit has adopted the longstanding premise that "the requisite intent may be inferred from a sufficiently reckless disregard of the accuracy of the facts." *Black*, 787 F.2d at 506.[12] *See also Central Nat'l Bank & Trust Co. v. Liming (In re Liming)*, 797 F.2d 895, 897 (10th Cir.1986) ("a statement need only be made with reckless disregard for the truth … under § 523(a)(2)(B)"). The premise that scienter can be proved by elements other than direct proof is the prevailing case law. "[I]t is sufficient to show that a false representation on a financial statement … was made with reckless indifference and disregard of the actual facts and *without examining the available sources which were readily available and the statement was made without reasonable grounds to believe that the statement was, in fact, correct*." *Sun Bank & Trust Co. v. Rickey (In re Rickey)*, 8 B.R. 860, 863 (Bankr. M.D.Fla.1981) (emphasis added).[13]

**12.** In *Black,* the creditor was unable to prove the intent to deceive in financial statements intended to induce an investment. Even though the standard that the creditor failed to meet in *Black* was the clear and convincing evidence standard, the preponderance of the evidence standard now proclaimed in *Grogan* would still require Alside ultimately to prove the Debtor's intentional deception or reckless disregard. *See In re Hott,* 99 B.R. 664 (Bankr.W.D.Pa.1989).

**13.** *Rickey* relied on a Supreme Court case factually similar to the one at hand. In *Morimura, Arai & Co. v. Taback,* 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586 (1929), two brothers were engaged in a partnership dealing with the silk trade.

The brother who managed the business prepared a financial statement for a supplier that was based upon his personal records and recollection of the financial circumstances of the partnership. He did not tie the data in the financial statement to the actual books and records of the business. The financial statement was materially false and was relied upon by the supplier. The Supreme Court held that not only was the financial statement incorrect, but

> that it was made and acquiesced in either with actual knowledge that it was incorrect, or with reckless indifference to the actual facts, without examining the available source

The current case law provides guidance in situations where debtors with no actual knowledge of the false statement rely on information provided by others. In *Ganis Corp. v. Jackson (In re Jackson)*, 89 B.R. 308 (Bankr.D.Mass.1988), the court held that

> the Debtors' conduct in failing to accord the transaction in question the attention it warranted, in signing documents containing misrepresentations or blank documents, and in relying on Garfinkle [an attorney/accountant] to the exclusion of common sense is unforgivable, but it does not rise to the level of fraud.

*Jackson*, 89 B.R. at 313. The court was persuaded by the debtors' testimony that they had no reason to suspect that Garfinkle, an attorney they trusted, was inserting false and misleading information in the documents submitted to the debtors by him. Acknowledging that exceptions to discharge were to be strictly construed, the court determined that the inconclusive evidence was insufficient for a finding of an intent to deceive.

In *Walker v. Citizens State Bank (In re Walker)*, 726 F.2d 452 (8th Cir.1984), the court dealt with the fraudulent acts of the agent of a debtor. The debtor (husband) signed documents prepared by his agent (wife) that were fraudulent. The court indicated that

> Proof that a debtor's agent obtains money by fraud does not justify the denial of a discharge to the debtor, *unless it is accompanied by proof which demonstrates or justifies an inference that the debtor knew or should have known of the fraud.* If the debtor was recklessly indifferent to the acts of his agent, then the fraud may also be attributable to the debtor-principal.

*Walker*, 726 F.2d at 454 (citation omitted) (emphasis added).

These cases must always turn on the credibility of the debtor's statements in denying intent, as well as the surrounding circumstances. "If the creditor presents evidence of acts and surrounding circumstances from which intent to deceive could be inferred, the debtor cannot overcome such inference with merely an unsupported assertion of honest intent." *In re Jones*, 88 B.R. 899, 903 (Bankr.E.D.Wis.1988). *Accord John Deere Co. v. Iverson (In re Iverson)*, 66 B.R. 219, 225 (Bankr.D.Utah 1986); *North Park Credit v. Harmer (In re Harmer)*, 61 B.R. 1, 9 (Bankr.D.Utah 1984). To determine if a debtor's assertion of honest intent is valid, courts have taken into consideration a debtor's sophistication and level of awareness of the accuracy of data contained on loan and financial statements. Courts have chosen not to accept the denials of debtors who, despite their education and business experience, display a cavalier attitude of failing to give financial statements the seriousness they require when published to lenders.[14] In

---

of knowledge which lay at hand, and with no reasonable ground to believe that it was in fact correct.
*Morimura*, 279 U.S. at 33, 49 S.Ct. at 215. The Supreme Court's opinion, in the context of this case, is especially harsh in that the Court held the obligation owed by the non-controlling brother nondischargeable. That individual not only did not participate in the drafting of the false financial statement and did not know the statement had been given to the supplier, but was illiterate and therefore could not have known what was contained in the financial statement or compared it to the original documents.

This court submits that if *Morimura* were decided by the Supreme Court today, the result would be different, and that such strict liability would not attach. Under the current trends, it is incumbent that a debtor have some knowledge that the financial statement is or may be incorrect, or that the debtor acted with such

abandon that the debtor had "no reasonable ground to believe that it was in fact correct." *Morimura*, 279 U.S. at 33, 49 S.Ct. at 215.

14. In *In re Coughlin*, 27 B.R. 632, 636 (1st Cir. B.A.P.1983), the court considered the debtor's extensive business experience and history of purchasing and leasing aircraft in establishing his intent to deceive. The court in *Texas Am. Bank v. Barron (In re Barron)*, 126 B.R. 255, 260 (Bankr.E.D.Tex.1991), was influenced by the fact that the debtor was an experienced attorney in finding his conduct was reckless. The evidence was clear that the debtor in *Fentress County Bank v. Lambert (In re Lambert)*, 64 B.R. 170, 177 (Bankr.E.D.Tenn.1986), was knowledgeable in completing and evaluating financial statements. The debtor in *Sparkman v. Janes (In re Janes)*, 51 B.R. 932, 936 (Bankr.D.Kan. 1985), failed to rebut the inference of intent to deceive and was held to have possessed it because he regularly engaged in the purchase of

*Horowitz Finance Corp. v. Hall (In re Hall),* 109 B.R. 149 (Bankr.W.D.Pa.1990), the debtor entrusted her son with and relied upon him to manage her financial affairs. She signed a notarized letter attesting to the accuracy of a financial statement submitted to the creditor in her request for a $600,000 loan. The evidence in *Hall* overwhelmingly indicated that the debtor "was a sophisticated and intelligent individual who [was] very active in and very much aware of her business affairs." Likewise, in *Bank of Commerce v. Ebbin (In re Ebbin),* 32 B.R. 936, 941 (Bankr. S.D.N.Y.1983), the court held a debt nondischargeable because of the debtor's "reckless indifference to the truth." The debtor's accountant filled in the numbers required by the financial statement; however, the debtor in *Ebbin* supplied those numbers to the accountant.

The trend in the case law appears to shift from a rather unforgiving standard set forth in *Morimura,*[15] to a more lenient standard applied in current cases. The earlier reasoning of the Supreme Court indicated that if the debtor had no reason to believe the information was *correct* and failed to verify the information, reckless intent would be found. The harshness of the standard is remarkable where, as in *Morimura,* the debtor was illiterate. But even so, it is logical to interpret the earlier standard as requiring the debtor to take affirmative action to independently verify financial information in order for the court to make a finding that the debtor reasonably believed the information was correct.

 The current trend indicates that if the debtor had no reason to believe the information was *incorrect* and therefore failed to verify the information, reckless intent will not be found. The difference is significant, especially in consideration of the evidentiary standard set forth in *Grogan.* If the presumption is that a debtor may rely on information reasonably obtained through normal business channels, then a creditor must prove by a preponderance of the evidence that some fact should have caused the debtor to inquire further, and that the failure to inquire was reckless. If the older view as set forth in *Morimura* prevailed, the presumption would be that the debtor could not rely on information gathered according to ordinary business means, effectively shifting the burden to the debtor to prove that use of the information was not reckless. Such a double burden on the debtor is inappropriate in light of the requirement that the court strictly construe the language of the statute and the use of the word "intent". First, if the creditor fails to prove actual deceptive intent by a preponderance of the evidence, the case law indicates it can attempt to prove inferred intent from the circumstances surrounding the preparation and submission of the application. Second, under the standard advocated by Alside, the burden would be shifted to the debtor not only to support an assertion of honest intent, but to prove that there was reason to believe the information supplied was correct. Such a circumstance is in contradiction with this court's duty to strictly construe the plain meaning of the statute's reference to the debtor's intent.

In this case, Sipes prepared the application from data garnered from the company's books and from financial figures supplied by Dale Aste. The Debtor did not supply the data for the application. Dale Aste instructed Sipes regarding what information to put in the application. The Debtor merely relied on the information supplied by Dale Aste and Sipes. There is no evidence in the record that the information seen by the Debtor or the errors in the application were such that he "knew or should have known of the falsity of the statement." *Iverson,* 66 B.R. at 225; *see Coughlin,* 27 B.R. at 636. Dale Aste testified that the Debtor was not actively involved in the finances of the company.

---

real estate and routinely prepared financial statements in conjunction with these transactions. A debtor who was a well-known businesswoman and had been involved in other business ventures was found to have acted with reckless disregard. *Town North Nat'l Bank v. Biedenharn (In re Biedenharn),* 30 B.R. 342, 346 (Bankr.W.D.La.1983).

**15.** See *infra* note 13.

Sipes testified that the Debtor did not participate in filling out the application and was never asked to sign any other application.

 Under Alside's interpretation of the law, the Debtor was compelled to introduce not only his uncontradicted assertion of honest intent and the foregoing evidence of Sipes and Dale Aste, but to establish that his failure to investigate the information in the application was appropriate, in order to defeat a finding of his inferred intent to deceive. This court determines that the burden on principals in a commercial context advocated by Alside is too great. If the court adopted Alside's position, officers or managers of businesses may be prevented from relying upon the financial information provided to them by their accountants or bookkeepers. Without some reasonable cause to believe that the information is incorrect, incomplete, inconsistent, or subject to further inquiry, debtors should be able to rely upon the information obtained by competent, skilled employees responsible for performing that task.[16] To require otherwise would cause undue duplicative source checking in the commercial world. The failure to check independently an employee's representations, when that individual is known for honest and thorough work performance, may have been careless or negligent, at worst, but certainly not grossly reckless.

*Reasonable Reliance*

Having determined that the Debtor did not possess the requisite intent to deceive, and therefore that the debt cannot be considered nondischargeable under section 523(a)(2)(B), this court need not reach the issue of whether Alside reasonably relied upon the false application in extending credit for $7,500. No finding is therefore made on the reasonable reliance element.

**16.** A principal/employer is recklessly indifferent to its agent/employee's fraudulent acts where it can be inferred that the principal should have known of the fraud. "Whether a principal knew or should have known of his agent's fraud is, of course, a question of fact."

## CONCLUSION

Having observed the Debtor's demeanor and evaluated his credibility, the court concludes that the Debtor did not act in reckless indifference or disregard of the inaccuracy of the information contained in the financial statement. Consequently, Alside has failed to prove by the less rigorous standard encompassed by *Grogan* that Aste caused to be published a materially false statement "with intent to deceive"; consequently, the Debtor's action does not fall within the purview of section 523(a)(2)(B)(iv).

THEREFORE, it is hereby

ORDERED, that the debt owed by the Debtor to Alside is discharged.

However, "more than the mere existence of an agent-principal relationship is required to charge the agent's fraud to the principal" in a nondischargeability action wherein the plaintiff alleges reckless indifference to the agent's acts. *Walker,* 726 F.2d at 454.