**In re Norman A. FIGUEREDO and Catalina V. Figueredo, Debtors.**

**The INTERNATIONAL BANK OF MIAMI, N.A., Plaintiff,**

v.

**Norman A. FIGUEREDO and Catalina V. Figueredo, Defendants.**

Bankruptcy No. 87–02832–BKC–TCB. Adv. No. 88–0049–BKC–TCB–A.

United States Bankruptcy Court, S.D. Florida.

March 10, 1988.

Dennis M. Campbell, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., for plaintiff.

Roberto F. Fleitas, Miami, Fla., for defendant.

William Roemelmeyer, Miami Shores, Fla., Trustee.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

In its first count, the plaintiff bank seeks exception under 11 U.S.C. § 523(a)(2)(B) from the discharges of both debtors of its $149,251 claim (plus interest and fees). The debtors have answered and the matter was tried on February 18.

For the reasons discussed below, I find that plaintiff has failed to prove its allegations.

## Count 2

In its second count, plaintiff sought denial of each debtor's discharge under § 727(a)(5). By stipulated motion, both parties have requested dismissal of that count. (CP 18). The motion is granted and count 2 is dismissed with prejudice. However, in view of the provision in B.R. 7041 requiring notice to the trustee before dismissal of any action under § 727, notice is given to the trustee, William Roemelmeyer, that upon his request filed within 10 days of the entry of this Order, the dismissal of count 2 will be vacated and he will be permitted to prosecute count 2.

## Plaintiff's Letters Rogatory

Plaintiff's motion (CP 7) for a six-week continuance of this trial was heard and denied (CP 9). One ground for the requested continuance was plaintiff's wish to examine a witness, Sergi, in Argentina by letter rogatory. Plaintiff was instructed to submit an affidavit stating the proof expected to be elicited from this witness in order for this court to determine whether the final hearing should be continued to permit the presentation of this proof. (CP 9). Plaintiff has failed to do so.

## Count 1

Plaintiff alleges (in 23 paragraphs on nine pages) that in extending credit to the debtors, it relied on *four* different financial statements fraudulently furnished to it by the debtors. At trial, it conceded that the first two financial statements were not made or published by the debtors, and ¶ 8 through ¶ 13 of the complaint have been abandoned.

Plaintiff's action, therefore, is based solely on a corporate financial statement as of June 30, 1986 delivered to it by the debtor wife in October 1986 and a personal financial statement of the debtors delivered to it by the debtor wife at the same time. (¶ 14 through ¶ 19).

■ It is plaintiff's burden under § 523(a)(2)(B) to prove that at least one of these statements (1) is "materially false", (2) that it "reasonably relied" upon the statement, (3) in the "extension, renewal, or refinancing of credit", and that (4) each debtor "caused [the statement] to be made or published with intent to deceive". It is also plaintiff's burden to prove each of these elements by "clear and convincing" evidence. *In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986).

A debt may be excepted from an individual's discharge under this subsection on account of a false *corporate* statement, if the statement is that of an "insider". § 523(a)(2)(B)(ii). In this case, the corporation was an "insider" of the debtors, as that term is defined in § 101(30)(A)(iv), because the debtor husband owned all the corporate stock and controlled it and the debtor wife was the corporation's secretary/treasurer.

■ Both statements were materially false and each debtor caused each statement to be made and published with an actual intent to deceive the plaintiff. However, I find that the plaintiff did not in fact rely upon either statement in either the extension, renewal, or refinancing of credit to the corporation.

The debt, which is not disputed, is owed by the corporation. It is personally guaranteed by the debtors. The corporation was formed in 1981 for the importing of frozen fish. Problems in its supply of fish from Grenada led to losses. The 1985 and 1986 tax returns reflected a negative net worth of, respectively, $1,025,651 and $897,630. In May 1986, the majority stockholder, Sergi, gave all of his stock to the debtor husband.

Since 1979, Sergi, whose personal net worth was at least $25 million, had been plaintiff's largest customer. In 1984, while he still controlled the corporation, he obtained a $100,000 line of credit for the corporation. This credit was extended upon Sergi's personal guaranty. The plaintiff did not rely on the corporate assets, which were far less than the line of credit, nor on the debtors' personal guaranty.

In 1985, Sergi moved his account to another bank. However, the line of credit for the corporation was thereafter increased to $150,000 in the expectation, subsequently

realized, that Sergi would bring at least some of his deposits and business back to the plaintiff bank. Here, again, plaintiff relied exclusively upon Sergi's guaranty and credit.

The annual line of credit expired in October 1986, after Sergi had abandoned the corporation. At that point, plaintiff demanded and received from the debtors the two financial statements which are the basis of this action. It is clear that the plaintiff was not satisfied with either statement and refused to renew the line of credit in reliance upon them. It did, however, extend the corporate note 30 days in October and another 30 days in November to give the debtors a chance to submit additional information. At the end of the second extension, the plaintiff remained unsatisfied. The line of credit was cancelled and the corporate note was called. Plaintiff has instituted suit against Sergi upon his guaranty of the corporate note.

Assuming that the two 30–day extensions of the corporate note were an "extension" or "renewal" of credit[1], I find that plaintiff did not in fact rely upon either the corporate or the debtors' financial statement. It relied, during this brief forbearance, exclusively on Sergi's personal guaranty and credit and the excellent record of its prior dealing with him and his interests.

Because plaintiff has failed to prove an element essential to its cause of action under § 523, a separate judgment will be entered dismissing this action with prejudice. Costs may be taxed on motion.

---

1. Actually, the line of credit was not renewed and the word "extension" in this statute is used in the sense of provided, rather than lengthened. I doubt that plaintiff's 60–day forbearance in calling the corporate note (to afford the debtors time to gather additional material) was either an "extension, renewal, or refinancing of credit" as those terms are used in § 523(a)(2).