In re Gerald James LIPTAK aka/dba Jerry's Shoe Shoppe and Debra Lynn Liptak, Debtors.

**FLEET CONSUMER DISCOUNT COMPANY, Plaintiff,**

v.

**Gerald James LIPTAK aka/dba Jerry's Shoe Shoppe and Debra Lynn Liptak, Defendants.**

Bankruptcy No. 87–2691.

Adv. No. 88–0002.

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 4, 1988.

Ira R. Mazer, Abrams & Mazer, Monroeville, Pa., for Plaintiff.

Robert Paul Vincler, Pittsburgh, Pa., for Defendants.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court is the Complaint of Fleet Consumer Discount Company ("Fleet") objecting to the dischargeability of a certain debt owed to it by Gerald James Liptak and Debra Lynn Liptak ("Liptaks").[1] Fleet contends that the Liptaks made and/or published a materially false financial statement, in reliance upon which Fleet granted a loan extension in the sum of $1,146.20. Fleet seeks this Court's determination that the debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). The Liptaks contend that the omissions from their financial statement were not made with the intent to deceive, and therefore the debt should be discharged.

Based upon the testimony adduced at trial and this Court's further research, we find that the debt is not dischargeable.

### FACTS

On September 17, 1987 the Liptaks entered into an extension of a prior loan agreement with Fleet, borrowing an additional sum of $1,146.20. In conjunction with this extension, Fleet required the Liptaks to submit a new financial statement. That statement showed total debt of $7,000.00. Fleet compared that financial statement to a statement submitted by the Liptaks with their original loan application several months earlier, and the previously obtained credit report. No major discrepancies appeared; therefore Fleet approved the extension and disbursed the funds.

Less than twenty-four (24) hours after receiving this loan, Mrs. Liptak consulted with a lawyer, regarding certain financial problems associated with her husband's business. Said lawyer is known to this Court, as he has represented numerous debtors in Chapter 7 bankruptcies. One week later, Mrs. Liptak met with another

---

1. This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

attorney, regarding the same problem; said attorney also represents a significant number of debtors in bankruptcy.

On October 2, 1987, fifteen (15) days after obtaining the loan from Fleet, the Liptaks met with their present counsel and filed their bankruptcy petition.

Upon examination of the Liptaks' bankruptcy schedules of liability, Fleet became aware that they had declared in excess of $61,000.00 of secured debt, and unsecured debt in excess of $39,000.00. Fleet then filed the within adversary proceeding to have the instant debt declared nondischargeable.

The Liptaks defend on the basis that they had no intent to deceive. They assert that they listed all of their personal debts on Fleet's documentation, and that they believed the debts of Mr. Liptak's business were separate and distinct. Although the business is not incorporated, Mr. and Mrs. Liptak testified that they did not know they were personally liable for the debts of the business. The Liptaks claim that the loan from Fleet was personal, and was in no way tied to Mrs. Liptak's lawyer-shopping. However, the testimony speaks otherwise.

Mr. Liptak testified that he planned to use the Fleet loan for two purposes: 1) to make minor repairs to his vehicle; and 2) to add financial assistance to the business. Therefore, while he refers to this an a personal loan, Mr. Liptak planned to distribute these funds into his business.

Even more convincing, however, is Mrs. Liptak's testimony wherein she sets forth the following chronology:

(1) At some point prior to September 17, 1987 she made numerous telephone calls to various of her husband's business suppliers, and found a substantial amount of outstanding debt.

(2) On September 17, 1987 she signed a financial statement listing $7,000.00 of total debt.

(3) At the September 17, 1987 meeting to close the loan, she and her husband advised Fleet that the business was going very well and that a second location would be opening shortly.

(4) During the night of September 17–18, 1987, while at work, Mrs. Liptak read a newspaper article dealing with bankruptcy as a means of eradicating debt.

(5) Immediately after work, on the morning of September 18, 1987, Mrs. Liptak visited a bankruptcy lawyer to discuss the financial difficulties of the business.

(6) Both before and after the meeting at Fleet, Mrs. Liptak was highly concerned over the financial problems of the business, yet in conversation with Fleet, a very rosy picture was painted.

## ANALYSIS

Section 523 of the Bankruptcy Code provides that a discharge under Section 727 does not discharge certain debts; it then identifies those debts that are excepted from discharge. Section 523(a)(2)(B) provides in pertinent part:

A discharge under ... this title does not discharge an individual debtor from any debt ... for money ... to the extent obtained by ... use of a statement in writing—(1) that is materially false; (ii) respecting the debtors ... financial condition; (iii) on which the creditor to whom the debtor is liable for such money ... reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive; ...

Because the dischargeability of a certain debt will affect the debtors' ability to obtain a fresh start, these exceptions must be strictly construed against creditors and in favor of debtors. *In re Cerar*, 84 B.R. 524 (Bankr.C.D.Ill.1988); *In re Burke*, 83 B.R. 716 (Bankr.D.N.D.1988); *In re Ramonat*, 82 B.R. 714 (Bankr.E.D.Pa.1988); *Matter of Ethridge*, 80 B.R. 581 (Bankr.M.D.Ga. 1987). The creditor must prove each element by clear and convincing evidence. *In re Black*, 787 F.2d 503 (10th Cir.1986); *In re Hunter*, 780 F.2d 1577 (11th Cir.1986); *In re Bonnett*, 73 B.R. 715 (C.D.Ill.1987); *Matter of Ayers*, 83 B.R. 83 (Bankr.M.D.

Ga.1988); *In re Denkler,* 79 B.R. 749 (Bankr.W.D.Tenn.1987).

In the case at bar Fleet must prove that:

(1) the Liptaks provided Fleet with a written statement of their financial condition;

(2) said statement was materially false;

(3) Fleet reasonably relied on the financial statement; and

(4) the Liptaks made or published the statement with the intent to deceive.

*See In re Black, supra; In re Figueredo,* 84 B.R. 856 (Bankr.S.D.Fla.1988); *In re Picou,* 81 B.R. 152 (Bankr.S.D.Fla.1988); *In re Lesher,* 80 B.R. 121 (Bankr.E.D.Ark. 1987).

The only issue to be litigated was the intent of the Liptaks. Knowing that defendants will rarely if ever admit to having possessed an intent to deceive or defraud another, the courts have allowed the use of circumstantial evidence to reach such a finding. The standard for decision includes recklessness, indifference, and/or disregard for accuracy. *In re Black, supra; In re Martin,* 761 F.2d 1163 (6th Cir.1985); *Matter of Duncan,* 81 B.R. 665 (Bankr.M. D.Fla.1987); *In re Lesher, supra.*

Fleet elicited sufficient testimony from the Liptaks and its own witness to prove by clear and convincing evidence that the Liptaks intended to withhold any negative information relating to Mr. Liptak's business venture. The unrefuted testimony shows that both Mr. and Mrs. Liptak knew the business was in substantial debt. Trade creditors were owed substantial sums; in most cases those accounts were sixty (60) days old or more. The rent on the business facility was in arrears at least six (6) weeks at the time of the loan, and a "business" debt owed to Equibank was also two (2) or three (3) months in arrears. The summer sales had been very bad, due in part to faulty heating, ventilation and air-conditioning at the business premises. Mr. Liptak said he hoped the problem would be corrected, but did not indicate any certainty thereof. Mr. Liptak's business was in such need of financial assistance that he was forced to take on another job. Mr. and Mrs. Liptak knew these things; yet, when they discussed the business with Fleet on September 17, 1987, they told the loan officer that business was good and that they were planning to open a second location. Had the Liptaks advised Fleet about any of their business related problems, Fleet would have inquired further. By listing only those debts of a non-business nature, the Liptaks succeeded in deceiving Fleet.

The Liptaks have argued that they did not know they were personally liable for the business debts. If this is in fact true, and we are hard pressed to so accept, this is just the type of reckless, indifferent attitude which meets the standard of proof for intent to deceive.

Mr. and Mrs. Liptak are intelligent individuals. Mr. Liptak entered into a business venture and participated in that business for at least one (1) year. He dealt with landlords, suppliers and employees on a regular basis. Mrs. Liptak is a professional draftsperson and possesses sufficient business savvy to provoke her to check on the outstanding debt, take note of newspaper articles discussing eradication of same, and contact several lawyers. Mr. and Mrs. Liptak have not persuaded this Court that they truly believed the business debts were separate and would have no effect on Fleet's decision to approve the loan. To the contrary, it appears that the Liptaks knew that they were in financial trouble and omitted *any* indication, written or verbal, that the business was in dire straits. These actions clearly show a reckless disregard for the accuracy of the financial statement.

An appropriate Order will be issued.

## ORDER OF COURT

AND NOW at Pittsburgh in said District this 4th day of August, 1988 in accordance with the foregoing Memorandum Opinion of this same date, it is ORDERED, ADJUDGED and DECREED that Judgment is hereby entered for the Plaintiff; and the debt Plaintiff is not discharged in bankruptcy.