**In re David Lee HOTT and Susan Christine Hott, Debtors.**

**SIGNAL CONSUMER DISCOUNT COMPANY, Plaintiff,**

v.

**David Lee HOTT, a/k/a David L. Hott, Defendant.**

**Bankruptcy No. 88–1719.
Adv. No. 88–0456.**

United States Bankruptcy Court,
W.D. Pennsylvania.

May 3, 1989.

Mary Ann Petrillo, Hyatt Legal Services, Monroeville, Pa., for defendant.

Jesse L. Katz, Pittsburgh, Pa., for plaintiff.

Stephen I. Goldring, Asst. U.S. trustee, Pittsburgh, Pa.

## MEMORANDUM OPINION

·BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is Plaintiff's Objection to the Dischargeability of a Certain Debt owed by the Defendant. Specifically, Plaintiff alleges Defendant used a false financial statement to obtain money, thereby rendering the resultant debt nondischargeable pursuant to § 523(a)(2)(B). Defendant denies any intent to deceive and asserts that the omission of pertinent information occurred as a result of guidance by Plaintiff's agent and/or employee.

A trial was held on this issue and the parties presented testimony and exhibits. Based upon same, we find this debt to be nondischargeable.

## FACTS

Defendant is a college graduate with a degree in Business Administration. Prior to being laid off, he was employed as an insurance agent, and as part of said employment, regularly collected financial information from prospective clients to determine appropriate levels of insurance for purchase. As part of his work experience Defendant dealt with debt/income ratios. After observation of his testimony, the Court finds Debtor to be bright and articulate. Defendant's wife is also a college graduate, and from her testimony similarly appeared bright and articulate.

Defendant and his wife had completed college in 1986. As is the normal course, their student loans were placed in a "grace period" deferred status. Defendant acknowledges his outstanding student loan debt is approximately $14,500.00.

· During this time Defendant became employed. Bills began to accumulate and Defendant found himself with several outstanding balances approaching their outer limits. At about this same time Defendant received, by mail, a promotional loan voucher from Plaintiff, offering Defendant the opportunity to borrow several thousand dollars. Defendant discussed the voucher with his wife, considering its use for purposes of debt consolidation. His wife, who handled the financial aspects of their personal lives, agreed that the loan was a good idea, and provided Defendant with a list of all outstanding balances and current

monthly payments. Said list has long since been destroyed by the Defendant.

On March 26, 1987 Defendant entered Plaintiff's local office in order to complete a credit application. While completing the form, Defendant claimed he could not determine where it would be appropriate to list his school loans. He testified that he inquired of one of Plaintiff's employees, who allegedly advised him that inclusion of same on said application was unnecessary, "because Defendant owned automobiles". Under questioning from the Court, Defendant provided a physical description of the man he claims advised him. On rebuttal, Plaintiff's manager testified that no one fitting the description worked for Plaintiff in his office at that time. He also stated that certain writing on the application, attributed by the Defendant to this gentleman, was in fact the writing of his secretary, a woman. Additionally we note that Defendant's explanation regarding automobiles is suspect. Plaintiff's claim arises from an unsecured loan; Defendant's ownership in any particular vehicle would not provide Plaintiff with any particular comfort or protection.

In any case, Defendant claims this unidentified individual told him not to worry about including the student loans, and therefore, he did not. On further examination Defendant admitted to thinking same to be odd, but decided "not to worry" as he asserts he was instructed. Defendant also acknowledges that he knew, and knows, that the debt on his student loan was approximately six (6) times greater than his next largest debt; in fact his total unrelated debt was approximately equivalent to his educational debt.

Plaintiff's manager testified as to the procedure employed for processing loan applications and that same was followed in this case, to-wit:

(1) an employee takes the party's application;

(2) a credit bureau report is obtained;

(3) references and information on the application are cross-checked for accuracy;

(4) a credit worksheet is prepared to determine a debt/income ratio;

(5) the manager approves or disapproves the loan; and

(6) the customer is contacted.

The manager reviewed the credit application and the credit bureau report. Two minor discrepancies appeared which the manager considered inconsequential. Neither the credit application nor the credit bureau report included any reference to a student loan, deferred or otherwise. Thereafter, the manager reviewed the credit worksheet to determine Debtor's debt/income ratio. He testified that it was approximately fifty percent (50%), without including any eventual student loan payments. Said ratio is considered to be a danger level by Plaintiff—a point at which there exists concern over a debtor's ability to repay. The manager contacted Debtor and informed him that the loan could be granted, on the condition that Debtor agree to Plaintiff's payoff of a car debt owed to GMAC, in order to reduce the debt/income ratio. Debtor agreed to same and the manager approved the loan.

The manager testified that if the student loan payments had been included the debt/income ratio would have exceeded one hundred percent (100%). He testified without hesitation that the credit application would have been denied if he had known about the student loan.

Defendant executed the loan agreement and received two (2) checks on March 30, 1987. One check was to the order of Defendant and GMAC; the other to Defendant only. The total principal amount of the loan was $3,458.01. Debtors' bankruptcy was filed on June 24, 1988. The balance due at the time of filing was $ 3,626.00, including accrued interest.

## ANALYSIS

Section 523(a)(2)(B) states in pertinent part:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—...

(2) for money ... to the extent obtained by—...

    (B) use of a statement in writing—

    (i) that is materially false;

    (ii) respecting the debtor's ... financial condition;

    (iii) on which the creditor to whom the debtor is liable for such money ... reasonably relied; and

    (iv) that the debtor caused to be made or published with intent to deceive ...

■ The elements to be proved by Plaintiff are as follows:

(1) the debtor obtained money;

(2) by a financial statement;

(3) in writing;

(4) concerning the debtor's financial condition;

(5) that the financial statement was materially false;

(6) that the debtor cause it to be made with the intent to deceive the creditor;

(7) that the creditor relied on it;

(8) that such reliance was reasonable; and

(9) that the loss was the proximate result of the making of the financial statement.

*In re Pascucci*, 90 B.R. 438 (Bankr.C.D. Calif.1988).

■ Each element must be proved by clear and convincing evidence. *Haxby v. National Boulevard Bank of Chicago*, 90 B.R. 340 (N.D.Ill.1988); *In re Figge*, 94 B.R. 654 (Bankr.C.D.Calif.1988); *In re Liptak*, 89 B.R. 3 (Bankr.W.D.Pa.1988).

The parties agree that Defendant did in fact obtain money as a result of his submission to Plaintiff of a written statement of his financial condition. It does not appear that Defendant questions Plaintiff's reliance on the statement and it is clear that Plaintiff's loss was proximately caused by Debtor's financial statement. It is not clear if Defendant concedes that the omission of the student loan caused the statement to be materially false; however, based upon his testimony regarding alleged instructions to omit it, we presume that issue is contested. The major contended issue is whether Defendant intentionally deceived Plaintiff as to his true financial status in order to obtain the funds.

■ Material falsity has been defined as "an important or substantial untruth". *In re Jones*, 88 B.R. 899, 903 (Bankr.E.D.Wis. 1988), *quoting Matter of Bogstad*, 779 F.2d 370 (7th Cir.1985). It includes any omission, concealment or understatement of the Defendant's material liabilities. *In re Jones, supra.* By omitting his single largest debt, a debt which by itself is as great as the remainder of his debt in combination, Defendant created a material falsity in his financial statement. The reason for the omission is relevant to intent, not materiality.

■ The decision of this Court then, will be determined by issues of credibility. Under § 523(a)(2)(B) a rebuttable presumption of intent to deceive arises by use of a false statement. *In re Jones, supra.* Defendant can rebut the presumption; and the Plaintiff will bear the ultimate burden of proof. Knowing, however, that the Defendant will rarely if ever admit to such an intent, the courts have permitted the use of circumstantial evidence of the intent. *In re Liptak, supra.* Thereafter, the Defendant cannot overcome the inference by making additional unsupported declarations of veracity. *In re Jones, supra.* The standard for decision includes recklessness, indifference, and/or disregard for accuracy. *In re Martin*, 761 F.2d 1163 (6th Cir.1985); *In re Liptak, supra.*

■ Defendant asserts that he fully intended to list his student loan debt on the application. He claims that said debt was in fact listed on the payment schedule his wife had prepared for him to take to Plaintiff's office. That paper has admittedly long since been destroyed. Defendant claims to have discussed the placement of the student loan information with one of Plaintiff's employees. Defendant provided a physical description of the alleged employee and emphatically declared that the manager was not the employee in question. The manager advised that his office had

only three (3) employees including himself: another man and a woman. None of the three people even vaguely matched Defendant's description.

Defendant claims that certain of the writing on his credit application was written by this other male employee; the manager identified the handwriting as that of his female secretary. Defendant claims the employee told him not to worry about it, so he did not. Given the size of the loan in relation to the remainder of his debt, Defendant's attitude certainly qualified as indifference and/or reckless disregard for accuracy.

We additionally reiterate Defendant's education and qualifications in relation to his claim of innocence. Defendant has a Bachelor's Degree in Business. He admits to having a knowledge of the concept called debt/income ratio and its purpose. Defendant would easily have been able to determine that inclusion of his student loan on the application would cause his debt/income ratio to skyrocket. Defendant asserts that he never stopped to perform any of the calculations. Although several courts have applied the "ostrich theory" to creditors when discussing reasonable reliance, the analogy is equally appropriate in this case: the Debtor may not "assume the position of an ostrich with [his] head in the sand and ignore facts which were readily available ..." *In re Smigel*, 90 B.R. 935 (Bankr.N.D.Ill.1988), *quoting In re Yeiser*, 2 B.R. 98, 101 (Bankr.M.D.Tenn.1979).

This Court finds that Defendant's position lacks credibility and Plaintiff's witness was fully credible. We find that at the very least Defendant recklessly omitted the existence of his student loan when completing the credit application submitted for Plaintiff's approval. Therefore, the debt must be found to be nondischargeable.

An appropriate Order will be issued.