**In re Glenn A. MAIN, III and Darla A. Main, Debtors.**

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Plaintiff,**

**v.**

**Glenn A. MAIN, III, Defendant.**

**Bankruptcy No. 85–2008–BM.
Adv. No. 89–0388–BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 2, 1991.

Donald R. Calaiaro, Calaiaro & Corbett, P.C., Pittsburgh, Pa., for debtors/defendant.

Lawrence G. Paladin, D'Ippolito & Paladin, Pittsburgh, Pa., and Robert J. Perry, Perry & Windels, New York City, for plaintiff.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiff National Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") seeks a determination that the debt owed to it by debtor/defendant Glenn A. Main, III ("debtor") is not dischargeable. It claims that it issued a bond guaranteeing debtor's financial obligations under a promissory note on the basis of a written financial statement executed and submitted to it by debtor. National Union maintains that debtor materially misrepresented his financial condition with the intention to deceive, all of which is in violation of 11 U.S.C. § 523(a)(2)(B).

Debtor argues that this action against him is time-barred under the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. Alternatively, debtor denies that National Union reasonably relied on the financial statement and denies that he intended to deceive National Union as to his financial condition.

Judgment will be entered in accordance with the reasoning set forth below in favor of National Union and against debtor. The debt owed to National Union by debtor is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

- I -

## FACTS

Debtor has been a certified public accountant since 1977 and a certified financial planner since 1981. As a financial planner, debtor evaluated client's financial needs and goals and advised and assisted them in finding suitable tax shelters. Debtor was also registered to sell certain securities and was a sales representative until 1989.

National Union is a corporation authorized, among other things, to issue financial guarantee bonds.

Debtor, in addition to assisting clients in purchasing suitable tax shelters, availed himself of his own expertise and purchased several tax shelters for himself.

On June 27, 1984, debtor executed a promissory note in the amount of $116,000 in connection with the purchase of a limited partnership interest in Club Alhambra Associates, Ltd. ("Club Alhambra"). United States Fidelity & Guaranty Company ("USF & G") issued a bond at that time guaranteeing debtor's financial obligations under the Club Alhambra promissory note. That same day, debtor executed an indemnification agreement in which he agreed to indemnify USF & G for any liability it might incur in connection with the bond. Debtor subsequently defaulted on the promissory note.

On October 27, 1984, debtor executed a promissory note in the amount of $158,400 in connection with the purchase of a limited partnership interest in Flagler–At–First Associates, Ltd. ("Flagler–At–First"). USF & G issued a bond at that time guaranteeing debtor's obligations under the Flagler–At–First promissory note. That same day, debtor executed an indemnification agreement in which he agreed to indemnify USF & G for any liability it might incur in

connection with the bond. Debtor subsequently defaulted on the promissory note.

On August 20, 1985, debtor executed a promissory note in the amount of $261,600 in connection with the purchase of a limited partnership interest in Brookfield Associates, Ltd. ("Brookfield"). The record does not indicate whether debtor's obligation under the note was guaranteed by a bond or, if it was, whether he executed an indemnity agreement to protect the issuer of the bond. The schedules attached to debtor's bankruptcy petition, however, represent that plaintiff had issued a bond in this matter. Debtor subsequently defaulted on the promissory note.

On September 27, 1985, debtor executed a promissory note in the amount of $2,070,-000 and a guarantee in favor of Beech Acceptance Corporation in connection with the purchase of an aircraft by Air Equity, Inc. ("Air Equity").

On October 6, 1985, debtor executed a promissory note in the amount of $150,000 in connection with the purchase of a limited partnership interest in Baywater Associates, Ltd. ("Baywater").

That same day, debtor executed a document entitled "Investor Application Financial Guarantee Bond For Limited Partnerships" which provided information about a prospective investor and their financial condition. The purpose of the application was to procure a bond issued by National Union which guaranteed debtor's financial obligations under the Baywater promissory note.

Included in the investor application was a financial statement. Debtor represented in the financial statement that his total assets were worth $1,349,000; that his liquid assets were worth $416,000; and that his total liabilities amounted to $280,000, of which $80,000 was in unsecured notes and $200,000 was for mortgages. Debtor affixed his initials to the following statement, which appeared at the bottom of the financial statement:

THE FOREGOING IS A TRUE AND ACCURATE STATEMENT AS OF 10/29/85. THERE HAS BEEN NO MA-TERIAL ADVERSE CHANGE IN THE FOREGOING SINCE SUCH DATE.

Debtor represented elsewhere in the investor application that he was not contingently liable on any obligation as an endorser, guarantor, surety, or indemnitor; that he considered himself to be an experienced and sophisticated investor; that he understood the full nature and risk of investment in a limited partnership interest and could afford the economic risk of such an investment for an indefinite period of time; and that he had never had an investment bonded by National Union or by any other surety company.

Debtor affixed his signature to the last page of the investor application. Directly above his signature was the following statement:

I, THE UNDERSIGNED, certify that the foregoing figures are a true and accurate statement of my financial condition.

Debtor failed to disclose in the investor application any of the liabilities arising from his purchasing of the other limited partnership interests. He did not disclose the promissory notes which he had executed in connection with the purchase of limited interests in Club Alhambra, Flagler–At–First, and Brookfield. Debtor also did not disclose the indemnification agreements which he had executed in favor of USF & G. In addition, debtor failed to disclose the promissory note and guarantee which he had executed in favor of Beech Acceptance Corporation in connection with the aircraft purchased by Air Equity, Inc.

The investor application, including the financial statement, had been completed by debtor's administrative assistant at debtor's direction and was signed by debtor himself. Debtor knew or should have known that said Administrative Assistant utilized as a basis for said financial statement prior documentation prepared by debtor himself.

The investor application provided to debtor had been accompanied by a document entitled "Investor Underwriting", which set forth the guidelines considered by plaintiff in evaluating the application. Said document contained the following language:

The financial date (sic) supplied from the Financial Statement enables us to see if the investor can bear the economic risk of the investment. We are looking for investors that have high gross income and enough liquidity to cover note payments and any other current liabilities they the investor might have. Liquid assets are defined as cash or assets that can be easily converted to cash ...

To find out what the investor's liabilities will be for the year, add up all the current liabilities and take 15% of any long term obligations. We use a ratio to determine if the investor is able to meet current obligations and future note payments. The ratio is as follows:

a) Average gross income
b) Cash/liquid assets
c) Long-term debt service
d) Short-term liabilities
e) Average annual note payments

$$\frac{a + b}{c + d + e} \geq 3$$

We will provide coverage for investor's (sic) that have greater than or equal to a 3:1 ratio, provided that their application was OK otherwise ...

National Union did not deal directly with potential limited partners. Investors applications completed by potential limited partners were submitted to the general partner, who in turn would forward them to National Union. Any problems or questions that National Union might have concerning a particular application were directed by it to the general partner, who then conveyed them to the potential investor.

On October 29, 1985, the same date on which he had executed the promissory note in favor of Baywater, debtor also executed a document entitled "Indemnification and Pledge Agreement", in which he agreed to indemnify National Union for any loss incurred by National Union in connection with any bond it might issue guaranteeing debtor's obligations under the Baywater promissory note. Said agreement provided that all notices pertaining thereto were to be sent to the following address:

National Union Fire Insurance Company of Pittsburgh, Pa.
70 Pine Street, 21st Floor
New York, N.Y. 10270
Attention: Division Manager,
Comprehensive Financial Risk Division

National Union issued a financial guarantee bond on November 20, 1985, in which it guaranteed debtor's obligations under the Baywater promissory note. National Union conducted no independent investigation to verify that the information contained in the investor application was true and correct.

Debtor eventually defaulted on the Baywater promissory note. As a consequence, National Union has made payments under the note amounting to $148,209.51.

Debtor and his wife, Darla Main, filed a joint voluntary chapter 7 petition on July 29, 1988. National Union was listed as a creditor in the schedules. Notice of debtors' bankruptcy was mailed by the Clerk of the Bankruptcy Court to:

National Union Fire Ins. Co.
70 Pine Street
New York, N.Y. 10270

The bar date for the filing of objections to discharge was November 7, 1988. National Union did not file a complaint objecting to discharge by that date. On May 15, 1989, National Union filed a motion requesting an extension of time in which to object to discharge and/or dischargeability. An order was entered on June 13, 1989, granting National Union an extension of time until June 30, 1989, to file a complaint. Debtor and his wife appealed the order to the district court. While the appeal was pending, this court extended the time for the filing of a complaint until thirty (30) days after resolution of the appeal. On October 17, 1989, debtor's appeal was dismissed as interlocutory by the district court.

On November 16, 1989, National Union filed a complaint against both debtors, objecting to their general discharge and/or dischargeability. Debtors moved to dismiss the complaint on December 29, 1989.

**750**

In support of their motion, debtors argued that National Union had in fact received timely notice of the bankruptcy and claimed that this court lacked authority to extend the time in which to bring a complaint because the request for an extension of time was itself untimely. Debtors' motion was denied by the court on March 23, 1990.

On January 23, 1990, two (2) months before their motion to dismiss was denied, debtors filed an answer to the complaint in which they raised the same issues as had been raised in their motion to dismiss.

National Union and debtor/defendant Darla Main filed a joint motion to dismiss the complaint against her. Said motion was granted by the court on June 6, 1991. The cause of action against debtor/defendant Glenn Main was unaffected by the dismissal of Darla Main.

Trial on National Union's objection to discharge and/or dischargeability as to debtor/defendant Glenn A. Main, III was held on November 19, 1991.

## - II -

### DEBTOR'S AFFIRMATIVE DEFENSE

Debtor asserts as an affirmative defense that National Union received timely notice of the bankruptcy filing and argues that its failure to file a complaint prior to the bar date of November 7, 1988, bars the present action against him. These same contentions were raised previously in debtor's motion to dismiss and were rejected by this court. See *In re Main*, 111 B.R. 535 (Bankr.W.D.Pa.1990).

Debtor, by virtue of raising these matters in the Answer as an affirmative defense, assumes the burden of proving that National Union received timely notice of the bankruptcy and that the present action against him is untimely. *Aamco Automatic Transmissions, Inc. v. Tayloe*, 67 F.R.D. 440, 451 (E.D.Pa.1975).

The reasons relied upon previously in denying debtor's motion to dismiss also apply to his affirmative defense. He has failed to establish that National Union re-

ceived timely notice of the bankruptcy filing and, if it did, that said notice was adequate to reasonably apprise it of the bankruptcy proceeding so as to afford it the opportunity to object in a timely manner to debtor's discharge. *In re Main*, 111 B.R. at 538–39. Nothing new was offered at trial to show that the court erred previously in making such determinations.

## - III -

### NONDISCHARGEABILITY OF DEBT OWED TO NATIONAL UNION

A general discharge granted under the Bankruptcy Code does not apply to certain debts. Section 523(a)(2)(B), for instance, provides that:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

. . . .

(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor cause to be made or published with intent to deceive ...

11 U.S.C. § 523(a)(2)(B).

Because the dischargeability of a debt may significantly affect a debtor's ability to make a fresh state, exceptions to dischargeability are to be strictly construed against the creditor and in favor of the debtor. *In re Ward*, 88 B.R. 727, 728 (Bankr.W.D.Pa.1988).

In order for the debt to National Union to be nondischargeable pursuant to § 523(a)(2)(B), National Union must establish the following:

(1) that debtor provided National Union with a written statement of his financial condition;

(2) that the statement was materially false;

(3) that National Union reasonably relied upon it; and

(4) that debtor caused it to be made or published with intent to deceive National Union.

See *In re Liptak*, 89 B.R. 3, 5 (Bankr. W.D.Pa.1988). Each of these elements must be established by a preponderance of the evidence. *Grogan v. Garner*, — U.S. —, —, 111 S.Ct. 654, 660, 112 L.Ed.2d 755, 759 (1991).

Debtor has conceded element (1) but denies elements (2), (3), and (4). That is to say, he concedes that he obtained property after providing National Union with a written statement of his financial condition. He denies, however, that the statement was materially false; denies that National Union reasonably relied on it; and denies that he intended to deceive National Union.

A.) *Material Falsity.*

■ A financial statement is materially false if it contains an important or substantial untruth. *In re Galizia*, 108 B.R. 63, 67 (Bankr.W.D.Pa.1989). Omission, concealment, or understatement of one's significant liabilities in a financial statement make it materially false. *Id.* A relevant factor in determining materiality is whether the creditor would have agreed to the transaction had it been aware of the debtor's true financial situation. *Matter of Bogstad*, 779 F.2d 370, 375 (7th Cir.1985).

The financial statement submitted to National Union on October 29, 1985, in connection with the application for a financial guarantee bond was false. Debtor failed to list the promissory notes he had executed in connection with his purchasing of limited partnership interests in Club Alhambra, Flagler–At–First, and Brookfield. He also failed to list the indemnification agreements he had executed in favor of USF & G in connection with the financial guarantee bonds issued by it. In addition, debtor failed to list the promissory note and guaranty he had executed in favor of Beech Acceptance Corporation in connection with the purchase of an aircraft by Air Equity.

Moreover, the falsity of the financial statement was material. In all, debtor failed to list approximately $2,600,000 in liabilities. As was made abundantly clear in the guidelines attached to the investor application, an application would be approved only if the ratio of the applicant's average gross income and liquid assets to his long-term debt service, short-term liabilities, and average annual note payments was *at least* 3 to 1. Based on the information provided in debtor's financial statement, the ratio was approximately 9 to 1. Had debtor included the above liabilities, the ratio would have been approximately 2 to 1 and plaintiff would not have qualified under the guidelines for a guarantee bond. National Union would not have issued the bond guaranteeing debtor's financial obligations under the Baywater promissory note had these liabilities been disclosed.

B.) *Reasonable Reliance.*

In order for National Union to prevail, it must establish that it actually relied on the financial statement and that such reliance was reasonable. *In re Martz*, 88 B.R. 663, 673 (Bankr.W.D.Pa.1988).

National Union actually relied on the financial statement in approving debtor's investor application. It would not have issued the financial guarantee bond had it known at the time that the ratio of debtor's assets to his liabilities was less than 3 to 1. Evidence that credit would not have been extended had the creditor received accurate information may be sufficient to show actual reliance. *In re Hall*, 109 B.R. 149, 154 (Bankr.W.D.Pa.1990).

Debtor's contention that National Union's underwriting business was designed to accommodate general partners wishing to sell limited partnership interests and therefore placed little or no reliance on the creditworthiness of the applicant is unfounded. National Union did not routinely approved all investor applications without regard to the applicant's creditworthiness, as reflected in the applicant's financial

statement. Approval was based upon the information contained in the investor application.

Care must be taken when determining whether a creditor's reliance was reasonable to avoid scrutinizing the creditor's business judgment. *In re Kroh*, 88 B.R. 987, 994 (Bankr.W.D.Mo.1988). The standard is an objective one and is based on the degree of care which a reasonably prudent business person would exercise in such a situation. *In re Galizia*, 108 B.R. at 68. A creditor does not have an affirmative duty to verify the accuracy of a financial statement. *Matter of Earls*, 80 B.R. 978, 979–80 (W.D.Mo.1987). It is not obligated to conduct an independent investigation when, on its face, all facts are sworn to as accurate. *In re Kroh*, 88 B.R. at 994. To require this in every instance would place on the creditor the unfair burden of presuming that every borrower who provides a written financial statement is dishonest. *In re Kroh*, 88 B.R. at 995. A creditor is not charged with assuming that every applicant for credit is trying to deceive it.

■ National Union's reliance on the financial statement submitted by debtor was reasonable under the circumstances, despite its failure to conduct an independent investigation to verify the accuracy of the information contained therein. It had no reason to suspect that debtor had grossly understated his liabilities. The application was, on its face, complete. There were no "red flags" which were of such nature as to place National Union on notice to conduct an independent investigation. *In re Pryor*, 93 B.R. 517, 519 (Bankr.S.D.Tex. 1988). The fact that debtor was a certified public accountant and a certified financial planner only served to enhance the credibility of the investor application.

National Union's failure to conduct a consumer credit check in this instance is not significant. Such information would pertain only to debtor's *consumer* debts and would not have uncovered the above undisclosed liabilities, all of which were in the nature of nonpromulgated investments.

### C.) *Intent To Deceive.*

Because a debtor will rarely, if ever, admit to having an intent to deceive, circumstantial evidence of such intent may be considered. *In re Liptak*, 89 B.R. at 5. A rebuttable presumption of intent to deceive arises upon the making or publishing of a materially false financial statement. *In re Jones*, 88 B.R. 899, 903 (Bankr.E.D.Wis. 1988). The creditor still bears, however, the ultimate burden of persuasion in this regard. *In re Hott*, 99 B.R. 664, 667 (Bankr.W.D.Pa.1989). Actual knowledge of the falsity of one's representations is not required for there to be intent to deceive. Recklessness, indifference, or disregard for accuracy may support a finding of intent to deceive. *In re Liptak*, 89 B.R. at 5.

■ The evidence presented at trial overwhelmingly establishes that debtor submitted the investor application either with actual intent to deceive or, at the very least, with reckless disregard for its accuracy. Debtor was a certified public accountant and a financial planner. Not only had debtor assisted several of his clients in completing the documents required for purchasing limited partnership interests, he also had purchased several such interests for himself. Debtor unquestionably understood what was required to complete the investor application and recognized the importance of a true and accurate statement of his liabilities. Notwithstanding all of this, debtor submitted an investor application in which he understated his liabilities by approximately $2,600,000. So doing was decidedly to his advantage in that he was able to acquire the financial guarantee bond when in fact he did not qualify under the guidelines. Even if debtor did not have actual knowledge of the failure to disclose all of his liabilities, he nonetheless was grossly reckless in this regard.

It makes no difference whether, as debtor contends, the investor application was completed for him by another party under severe time constraints imposed by the general partner of Baywater Associates. According to debtor, the investor application was completed at his direction by his administrative assistant. He further

claims that the general partner of Baywater Associates demanded that he purchase a limited partnership interest for himself and insisted that the investor application be completed and forwarded to it immediately.

These contentions, even if true, do not alter the outcome of this case. Debtor admitted that he did not bother to review the investor application in order to determine its accuracy before he signed it. Failure to do so was reckless. Also, the alleged insistence of the general partner that debtor purchase a limited partnership interest for himself and that he complete the investor application immediately do not excuse his failure to review the document before executing it. Debtor was under no obligation to accede to the demands of the general partner and could have refused to do so. Moreover, the general partner was not acting as the agent of National Union when it purportedly made these demands. Debtor voluntarily complied with these alleged demands and remained responsible for reviewing the application to ensure that it was true and correct. Failure to do so was a violation of that responsibility.

The debt owed to National Union by debtor which arises out of the indemnification agreement executed by debtor on October 29, 1985, is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

- IV -

### OBJECTION TO GENERAL DISCHARGE

National Union also maintains in its complaint that debtor's conduct also was in violation of 11 U.S.C. § 727 and claims that debtor therefore should be denied a general discharge.

11 U.S.C. § 727(a) provides that a chapter 7 debtor is entitled to a general discharge of all debts, unless one of eight (8) conditions has been met. The primary thrust of objections to discharge in general is to provide a vehicle whereby abusive conduct on the part of a debtor can be dealt with by denying them a discharge. *In re Rusnak*, 110 B.R. 771, 775–76 (Bankr. W.D.Pa.1990). In keeping with the legislative intent to provide debtors with a "fresh start", the court must be circumspect with considering the denial of a general discharge. Section 727(a) must be strictly construed against the objector and in favor of the debtor. *In re Rusnak*, 110 B.R. at 776.

National Union appears to have abandoned this particular cause of action. It has not given any indication as to which of the exceptions to general discharge applies to this case and offered no evidence at trial which would justify denying debtor a general discharge.

An appropriate Order shall be issued.

### ORDER OF COURT

AND NOW at Pittsburgh this 2nd day of December, 1991, in accordance with the accompanying Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that the debt owed by debtor/defendant Glenn A. Main, III, to plaintiff National Union Fire Insurance Company of Pittsburgh, Pennsylvania, which arises out of debtor's execution of the Indemnification and Pledge Agreement on October 29, 1985, is NOT DISCHARGEABLE pursuant to 11 U.S.C. § 523(a)(2)(B).