**In re Eric Vernon LUNDY, Debtor.**

**PITTSBURGH POLICE FEDERAL CREDIT UNION, Plaintiff,**

v.

**Eric Vernon LUNDY, Defendant.**

**ALLEGHENY COUNTY NO. 1 FEDERAL CREDIT UNION, Plaintiff,**

v.

**Eric Vernon LUNDY, Defendant.**

**Bankruptcy No. 93–21173–BM.**
**Adv. Nos. 93–2352–BM, 93–2355–BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

March 23, 1994.

Sean P. Hannon, Gorr, Moser, Dell & Loughney, Pittsburgh, PA, for plaintiff Allegheny County No. 1 Federal Credit Union.

Robert E. Dauer, Jr., Meyer, Unkovic & Scott, Pittsburgh, PA, for plaintiff Pittsburgh Police Federal Credit Union.

Coleen A. Jeffrey, Hyatt Legal Services, Pittsburgh, PA, for defendant/debtor Eric Vernon Lundy.

Claude C. Council, Jr., Ford & Council, Pittsburgh, PA, Chapter 7 trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Two adversary actions are before the court at this time. Pittsburgh Police Federal Credit Union (hereinafter "PPFCU") seeks a determination at Adversary No. 93–2352–BM that a debt owed to it which arises from a loan application debtor submitted on February 18, 1991 is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

Allegheny County No. 1 Federal Credit Union (hereinafter "ACCU") seeks a determination at Adversary No. 93–2355–BM that a debt owed to it which arises from a loan application debtor submitted on June 12, 1991 is not dischargeable pursuant to the same provision of the Bankruptcy Code.

Debtor adamantly denies both that PPFCU and ACCU reasonably relied on the loan applications and that he intended to deceive them when he incorrectly portrayed his financial condition.

Judgments shall be entered in favor of PPFCU and ACCU, respectively, and against debtor. The debts arising from the above loan applications are not dischargeable.

## –I–

### FACTS

Debtor's previous employer had been the City of Pittsburgh. He presently is employed by Allegheny County, Pennsylvania, as a maintenance worker.

PPFCU and ACCU are credit unions of which debtor is a member.

Debtor's father is president of PPFCU. He has never been a member of the committee that approves or rejects loan applications.

Debtor's uncle is president of ACCU. He has never been a member of the committee that approves or rejects loan applications.

In May of 1988, debtor purchased a residence located at 2017 Broadway Avenue in Pittsburgh for the sum of thirty thousand dollars ($30,000.00). He borrowed funds for the purchase from Dellwood Corporation and

in turn granted it a mortgage against the property.

Debtor submitted a written loan application to ACCU on July 7, 1990 for home repairs and to refinance a prior obligation to ACCU. An unsecured loan in the amount of $3,007.24 was approved by ACCU's loan committee on July 13, 1990. The loan agreement provided that the obligation was to be paid in eighty-nine (89) equal monthly installments.

On February 18, 1991, debtor submitted a written application to PPFCU for an unsecured loan for home repairs and to refinance a previous obligation to PPFCU. The section of the application captioned "Applicant's Statement" stated as follows:

I AM INDEBTED TO THE FOLLOWING CREDITORS. (LIST ALL DEBTS SUCH AS DOCTOR BILLS, INSTALLMENT LOANS, REAL ESTATE MORTGAGES, ETC. ATTACH ADDITIONAL SHEETS IF NECESSARY.)

The debt owed to Dellwood in connection with debtor's residence was the only debt listed on the loan application. The debt to ACCU which had been incurred in July of 1990 was not listed. Debtor also stated on the application that the value of his residence was $60,000.00

Debtor affixed his signature to the application immediately below the following statement:

I hereby certify that all statements made, including those on the reverse side, are true and correct and submitted for the purpose of obtaining credit. I have no other debts.

PPFCU's loan committee approved an unsecured loan in the amount of $8,503.49 on February 19, 1991. Debtor promised to pay the loan in sixty (60) equal monthly installments. The final payment was due on or before February 19, 1996.

On June 12, 1991, debtor submitted a written application to ACCU for an unsecured loan for home repairs and to refinance a previous obligation to ACCU.

In the section of the application pertaining to applicant's debts and liabilities, debtor listed the obligation to Dellwood and a previous debt owed to ACCU. He did not, however, list the above debt of $8,503.49 to PPFCU which he had incurred only four months earlier. Immediately below this section of the application, the following appeared in boldface type:

DO NOT OMIT ANY DEBTS! IF MORE SPACE IS NEEDED, USE REVERSE SIDE. INCOMPLETE APPLICATIONS CANNOT BE PROCESSED.

Debtor affixed his signature to the application. Immediately below his signature was printed the following:

PLEASE READ BEFORE SIGNING:

All the information in this application is true. I understand that section 1014 Title 18 US Code makes it a federal crime to knowingly make a false statement in this application. . . .

The initials of debtor's uncle were written at the top of the application.

ACCU's loan committee approved an unsecured loan on June 14, 1991. Debtor executed a loan agreement on June 20, 1991 wherein he borrowed $7,875.59. The final installment payment on the loan was due on or before June 16, 1995.

Debtor filed a voluntary chapter 7 petition on April 2, 1993. Schedule A, Real Property, listed debtor's residence as estate property with a declared market value of thirty-six thousand dollars ($36,000.00), some twenty-four thousand dollars ($24,000.00) less that the value declared on the loan application of February 18, 1991. The declared value on Schedule A was based on a professional appraisal conducted at the request of debtor's counsel in anticipation of the bankruptcy filing. The appraisal stated that the property would be expected to sell for thirty-five thousand dollars ($35,000.00) to thirty-seven thousand dollars ($37,000.00) if placed on the market for sixty (60) to ninety (90) days.

The primary reason why debtor filed for bankruptcy was to relieve himself of his obligations to PPFCU and ACCU. Debtor has reaffirmed his obligation to Dellwood pursuant to 11 U.S.C. § 524(c). The only remaining debts are owed to general unsecured creditors. Schedule F, Creditors Holding Unsecured Nonpriority Claims, lists debts in

the amount of $14,097.77. All but sixty-five dollars ($65.00) of this amount is owed to PPFCU and ACCU, respectively.

On July 12, 1993, PPFCU brought a complaint at Adversary No. 93–2352–BM seeking a determination that the debt arising out of the loan application of February 18, 1991 is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). Its objection to dischargeability of the debt is based on the statement in the loan application that debtor's residence had a value of sixty thousand dollars ($60,-000.00) and on his failure to list the prior obligation to ACCU incurred in July of 1990.

Debtor's defense is predicated upon his special relationship to PPFCU's president. Debtor does not deny that the declared value of his residence was grossly inaccurate or that he failed to list the obligation to ACCU on his loan application. He nonetheless denies that the debtor owed to PPFCU is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

According to debtor, PPFCU did not rely at all on these inaccuracies. His loan application would have been approved in any event, debtor argues, because his father was president of PPFCU. Also, debtor denies that he deliberately misstated his financial condition and denies that he intended to deceive PPFCU. He insists that he honestly believed at the time that his residence was worth sixty thousand dollars ($60,000.00) and honestly believed that he did not need to list all of his prior debt, including the debt to ACCU, because of his relationship to the president of PPFCU.

On July 13, 1993, ACCU brought a complaint at Adversary No. 93–2355–BM seeking a determination that the debt arising out of the loan application of June 12, 1991 is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). Its objection to discharge-

ability of this debt is based on debtor's failure to list on the loan application the prior obligation to PPFCU in the amount of $8,503.49 incurred in February of 1991.

Debtor's defense in this adversary is the same as his defense in the other adversary action in that debtor relies upon his special relationship to ACCU's president in denying that ACCU relied at all upon his loan application and in denying that he intended to deceive ACCU by omitting certain of his debts.

Debtor does not deny that he failed to list the above obligation to PPFCU. However, he denies that the debt owed to ACCU therefore is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

According to debtor, ACCU did not rely at all on his statement of existing liabilities. He asserts that his loan application would have been approved, regardless of the debts listed thereon, because his uncle was ACCU's president. In addition, debtor denies that he intended to deceive ACCU. He claims that he honestly believed that it was not necessary to list all of his debts because of his special relationship to ACCU's president.

Both adversary actions were tried on February 9, 1994. PPFCU, ACCU, and debtor were given an opportunity at that time to present evidence on the issues raised in the cases.

–II–

**ANALYSIS**

■ Section 523(a)(2)(B) of the Bankruptcy Code provides that certain debts are not dischargeable.[1]

In order for a debt owed to a creditor by the debtor to be nondischargeable pursuant

1. 11 U.S.C. § 523(a)(2)(B) provides in relevant part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained, by—

(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive....

to this provision, the creditor must establish that:

    (1) debtor obtained money, property, services, or an extension, renewal, or refinancing of credit;

    (2) it was obtained by means of a written statement concerning debtor's or an insider's financial condition;

    (3) the statement was materially false;

    (4) the creditor reasonably relied on it; and

    (5) debtor caused the statement to be made or published with intent to deceive the creditor.

See *In re Main*, 133 B.R. 746, 750–51 (Bankr. W.D.Pa.1991). Each element must be established by a preponderance of the evidence. See *Grogan v. Garner*, 498 U.S. 279, 287–88, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991).

Debtor has conceded elements (1), (2), and (3) in both adversary action. He admits to obtaining money and a refinancing of credit from PPFCU and ACCU, respectively, by means of materially false written statements concerning his financial condition. Elements (4) and (5), however, are in dispute.

Debtor denies that PPFCU and ACCU relied at all on the statements concerning his financial condition. According to debtor, his loan applications would have been approved without regard to the information concerning his financial condition because his father and his uncle were the presidents of PPFCU and ACCU, respectively.

In addition, debtor denies that he intended to deceive PPFCU and ACCU. According to debtor, he honestly believed that his residence was worth $60,000.00 when he prepared the application for a loan from PPFCU on February 18, 1991. He further asserts that he honestly believed that he did not need to list all of his debts on the loan applications because of his special relationship to the presidents of the two credit unions.

Two issues remain to be resolved in the above adversary proceedings:

    (1) Whether PPFCU and ACCU reasonably relied on debtor's statements concerning his financial condition in approving the loan applications; and

    (2) Whether debtor intended to deceive PPFCU and ACCU when he misstated his financial condition.

## A) *Reasonable Reliance*

■ In order for PPFCU and ACCU to prevail, they must establish that they *actually* relied upon debtor's description of his financial condition and that it was *reasonable* under the circumstances for them to do so. See *In re Main*, 133 B.R. at 751.

■ The credible evidence offered at trial causes this court to conclude that PPFCU and ACCU actually relied upon the information debtor provided concerning his financial condition when they approved his loan applications. Had debtor truthfully portrayed his financial condition, PPFCU and ACCU would not have approved the applications. Loans are approved or rejected based upon the objective calculations utilizing a set formula. Debtor's monthly income would not have been considered as adequate to repay new debts on top of all his prior ones.

Debtor's special relationship to the presidents of PPFCU and ACCU did not ensure that his loan applications would be approved without further ado. It only ensured expedited review of his applications.

Neither debtor's father nor his uncle had ever been a member of the loan committees responsible for reviewing loan applications. The loan committees made independent determinations concerning loan applications and did not "rubber stamp" applications by relatives of their presidents. ACCU's loan committee requested a credit report on debtor and utilized a worksheet in evaluating debtor's credit worthiness which was based in part on the information debtor had provided concerning his liabilities. PPFCU once had rejected a loan application submitted by a grandson of debtor's father.

It remains to be determined whether PPFCU's and ACCU's reliance was reasonable under the circumstances.

■ Care must be taken when determining whether a creditor's reliance was reasonable to avoid scrutinizing their business

judgment. *See In re Kroh,* 88 B.R. 987, 994 (Bankr.W.D.Mo.1988). The standard for determining reasonableness is objective and is based on the degree of care which a reasonably prudent business person would exercise in a similar situation. *See In re Galizia,* 108 B.R. 63, 68 (Bankr.W.D.Pa.1989). A creditor does not have an affirmative duty to verify in every instance the accuracy of a financial statement. *See Matter of Earls,* 80 B.R. 978, 979–80 (W.D.Mo.1987). It does not have an obligation to conduct an independent investigation when the applicant certifies in writing to its accuracy. *In re Kroh,* 88 B.R. at 994. A creditor is not required to assume that every applicant for credit is trying to deceive it. *In re Main,* 133 B.R. at 752.

■ PPFCU's and ACCU's reliance upon debtor's statements concerning his financial condition was reasonable under the circumstances. We believe a prudent business person in a similar situation would have done the same as PPFCU and ACCU did in this case.

By affixing his signature to the loan applications, debtor certified that the information contained therein was, to the best of his knowledge, information, and belief, true, complete, and accurate. Furthermore, considering debtor's special relationship to their presidents, PPFCU and ACCU perhaps had greater reason to rely upon the accuracy of the information provided than they might for someone who did not enjoy such a special relationship. The committees had reason to assume that debtor would be truthful lest he embarrass his father and his uncle. Debtor's special relationship, in other words, effectively constituted further certification that the information was truthful and accurate.

PPFCU's failure to examine debtor's credit history does not render its reliance unreasonable. As has been indicated, ACCU conducted such a search and uncovered nothing.

PPFCU and ACCU, in other words, had no reason to suspect that debtor had significantly understated his liabilities and had significantly overstated his assets. The loan applications were facially complete. No "red flags" arose to place them on notice to investigate any further than they did. *See In re Pryor,* 93 B.R. 517, 519 (Bankr.S.D.Tex. 1988).

**B) *Intent To Deceive***

■ Because a debtor rarely, if ever, will admit to intending to deceive, circumstantial evidence of such intent may be considered, *See In re Liptak,* 89 B.R. 3, 5 (Bankr. W.D.Pa.1988).

■ Although a rebuttable presumption of intent to deceive arises when one makes or publishes a materially false financial statement, the creditor has the ultimate burden of persuasion in this regard. *In re Main,* 133 B.R. at 752.

■ One need not know that one's representations are false in order for there to be intent to deceive. Recklessness, indifference, or disregard for accuracy may suffice to support a finding of intent to deceive. *See In re Liptak,* 89 B.R. at 5.

■ At the very least, debtor submitted the above loan applications with reckless disregard for and indifference as to the accuracy of the statements concerning his financial condition. Debtor had submitted several previous loan applications to PPFCU and ACCU and unquestionably was cognizant of the importance of presenting a true and correct description of his financial condition.

The "inaccuracies" about which PPFCU and ACCU complain were, at a minimum, a product of debtor's mistaken (and arrogant) belief that he did not have to be accurate and that his applications would be approved because of his special relationship to the presidents of the two credit unions. Because of this belief, debtor was reckless and indifferent and disregarded the need for accuracy and thereby intended to deceive PPFCU and ACCU for purposes of 11 U.S.C. § 523(a)(2)(B)(iv).

Appropriate judgments in favor of PPFCU and ACCU and against debtor shall be entered in the above adversary actions.

### *ORDER OF COURT*

AND NOW at Pittsburgh this 23rd day of March, 1994, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED**

that judgment is entered at Adversary No. 93–2352–BM in favor of Plaintiff Pittsburgh Police Federal Credit Union and against debtor Eric Vernon Lundy. The debt owed to plaintiff which arises out of the loan application of February 18, 1991 is NOT DISCHARGEABLE pursuant to 11 U.S.C. § 523(a)(2)(B).

### ORDER OF COURT

AND NOW at Pittsburgh this 23rd day of March, 1994, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that judgment is entered at Adversary No. 93–2355–BM in favor of plaintiff Allegheny County No. 1 Federal Credit Union and against debtor Eric Vernon Lundy. The debt owed to plaintiff which arises out of the loan application of June 12, 1991 is NOT DISCHARGEABLE pursuant to 11 U.S.C. § 523(a)(2)(B).